ATLANTIC CITY RACING ASSOCIATION, PLAINTIFF-RESPON-
DENT, v. THE ATTORNEY GENERAL OF THE STATE OF NEW
JERSEY AND THE NEW JERSEY RACING COMMISSION, DE-
FENDANTS-APPELLANTS, AND THE NEW JERSEY SPORTS
& EXPOSITION AUTHORITY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 5, 1983—Decided December 27, 1983.

Before Judges BISCHOFF, PETRELLA and BRODY.

*Irwin I. Kimmelman,* Attorney General of New Jersey,
attorney for appellants (*Michael R. Cole,* Assistant Attorney
General, of counsel; *Andrea M. Silkowitz,* Deputy Attorney
General, on the brief).

*Saiber, Schlesinger, Satz & Goldstein,* attorneys for respon-
dent Atlantic City Racing Association (*David M. Satz, Jr.,* of
counsel and on the brief).

*Winne, Banta & Rizzi,* attorneys for respondent New Jersey
Sports & Exposition Authority (*Joseph A. Rizzi* on the letter
brief).

*Dowd & Dowd,* attorneys for *Amicus Curiae* Horsemen's
Benevolent and Protective Association, New Jersey Division
(*Dennis O. Dowd* on the brief).

PER CURIAM.

This is an appeal from that portion of a judgment entered in
the Law Division on April 20, 1983, which declared that:

> ... Article IV, Section VII, Paragraph 2 of the New Jersey Constitution does
> not prohibit the enactment of legislation which would authorize a duly licensed
> racetrack in New Jersey (sending track) to simulcast horse races live by
> television to another New Jersey licensed racetrack enclosure (receiving track)
> for the purpose of allowing patrons at the receiving track to place pari-mutuel

system wagers upon those races, and to incorporate those wagers into central pari-mutuel pools generated at the sending track.

The judgment is affirmed essentially for the reasons expressed by Judge Gruccio in his opinion reported at 189 *N.J.Super.* 549 (Law Div.1983).

We add the following facts. The Legislature passed and the governor approved on Sept. 7, 1983 the Intertrack Wagering Act, P.L. 1983, c. 340 [*N.J.S.A.* 5:5–100 *et seq.*]. The Introductory Statement accompanying the Bill reads:

This bill, to be known as the "Intertrack Wagering Act," provides for the simulcasting of an intertrack wagering on horse races conducted within the State.

The bill provides that intertrack wagering and simulcasting may be conducted until January 1, 1985, but will be extended only if the voters of the State approve the extension at the general election to be in November, 1984.

Section 15 of the Act provides:

This act shall take effect immediately, but shall expire on January 1, 1985 unless approved by the voters at the general election held in November, 1984 as provided in section 14 of this act.

Affirmed.

Judgment reversed, 98 N.J. 535.

PETRELLA, J.A.D. dissenting.

As a general rule provisions of our Constitution are considered a part of a living document and therefore subject to consideration in light of current events where not inconsistent with the fundamental intent expressed therein. *Behnke v. N.J. Highway Auth.*, 13 *N.J.* 14, 25–26 (1953). I am of the opinion that the anti-gambling provision of the New Jersey Constitution (1947), Art. IV, § VII, par. 2, is an exception to that general rule and requires us to read the Constitutional provision strictly. Art. IV, § VII, par. 2 of our Constitution essentially imposes limitations on the Legislature's ability to enact laws in certain types of cases. The cited provision of our Constitution reads in part as follows:

No gambling of any kind shall be authorized by the Legislature *unless the specific kind, restrictions and control thereof have been heretofore submitted to, and authorized by* a majority of the votes cast by, *the people at a special election* or shall hereafter be submitted to, and authorized by a majority of the

votes cast thereon by, the legally qualified voters of the State voting at a general election, except that, without any such submission or authorization; (Emphasis added.)

Paragraph 2 itemizes certain specific kinds of gambling which are authorized for charitable, educational, religious, fraternal and veterans organizations, civic and service clubs, senior citizens associations, volunteer fire companies and first aid or rescue squads. The State is authorized to conduct a lottery and regulate gambling casinos in Atlantic City.

Gambling has thus been barred in this State unless authorized specifically by the Constitution or the "specific kind, restrictions and control thereof" have been "heretofore" approved (before the adoption of the 1947 Constitution) by a majority of the voters voting at a special election or thereafter approved at a general election. The 1939 amendment to our 1844 Constitution had provided an exception for horse racing right in our organic law, but in strictly defined terms.

The Attorney General refers to the provision of the 1844 Constitution as being "incorporated by reference" into the 1947 Constitution. By that I take it that he refers to the language in the 1947 Constitution treating as authorized gambling what had been "heretofore" approved horseracing under the 1939 amendment to the 1844 Constitution. Art. IV, § VII, par. 2 of the 1844 Constitution, as amended,[1] by the people in a special election on June 20, 1939, provided:

---

[1]The amendment was formalized by proclamation on July 11, 1939. The annotation to this provision reads:

Originally, the Constitution of 1844 provided simply that "No lottery shall be authorized by this state; and no ticket in any lottery not authorized by a law of this state shall be bought or sold within the state." Art. 4, § 7, par. 2. This paragraph was amended on September 28, 1897, Proclamation October 26, 1897, and, as amended, it read as follows: "No lottery shall be authorized by the legislature or otherwise in this state, and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, book-making or gambling of any kind be authorized or allowed within this state, nor shall any gambling device, practice or game of chance now prohibited by law be legalized, or the remedy, penalty or

*It shall be lawful to hold, carry on, and operate in this State race meetings whereat the trotting, running or steeplechase racing of horses only may be conducted* between the hours of sunrise and sunset on week days only and in *duly legalized race tracks, at which the pari-mutuel system of betting shall be permitted.* No lottery, roulette, or game of chance of any form shall be authorized by the Legislature in this State, and no ticket in any lottery shall be bought or sold within this State, or offered for sale; *nor shall pool-selling, book-making,* or gambling of any kind *be authorized or allowed within this State, except pari-mutuel betting on the results of the racing of horses only,* from which the State shall derive a reasonable revenue for the support of government; nor shall any gambling device, practice, or game of chance, or pari-mutuel betting thereon now prohibited by law, except as herein stated and otherwise provided, be legalized, or the remedy, penalty, or punishment now provided therefor be in any way diminished. [Emphasis added.]

The 1947 Constitutional provision may be said to have "incorporated" the prior Constitutional provision because the 1939 amendment to the 1844 Constitution was "heretofore submitted to, and authorized by a majority of the votes cast by, the people at a special election...." Therefore, such racing as was authorized by the 1844 Constitution's provision as amended in 1939, need not have been again submitted to the voters for approval. However, the issue is the extent to which wagering on horse races was "heretofore" authorized by the voters, and whether this includes simulcasts of the nature under review.

To determine the 1939 amendment's scope in authorizing horse racing and pari-mutuel betting at legalized tracks, we must look to the terms of the Constitutional amendment which says that with respect to horse racing it shall be "lawful to hold ... race meetings ... in duly legalized race tracks, at which the pari-mutuel system of betting shall be permitted." I read this provision as meaning races may be held only at the legalized track "at which" the betting is actually permitted, and not at some other licensed facility which may or may not also be having its own races that day or at that time. In order to determine the intent of the Constitutional language, it is appropriate to consider the statutory enactments which were adopted

punishment now provided therefor be in any way diminished." [*N.J.S.A. Const.,* 1944, Art. IV, § VII, par. 2, Annotation, page 621.]

virtually contemporaneously with the approval of the 1939 Constitutional amendment. *Lloyd v. Vermeulen,* 22 *N.J.* 200, 210 (1956); Attorney General F.O. 12 (1977). As noted in the cited Attorney General's Formal Opinion:

Moreover, in specific regard to the construction of constitutional provisions, the courts have held that the contemporaneous legislative understanding of constitutional terms susceptible of different meanings is entitled to great weight in establishing the precise definition of those terms.

Laws of 1940, chapter 17, effective March 8, 1940 (*N.J.S.A.* 5:5–22, et seq.) were the statutory enactments which implemented that Constitutional provision. *N.J.S.A.* 5:5–62 clearly limited wagering to the track at which the race meet was held. However, this section was recently amended by *L.* 1983, *c.* 340 which will be discussed later.

Atlantic City Racing Association relies heavily on the decision by the judge below interpreting the 1939 Constitutional amendment as having "clearly and specifically authorized the operation of horse races at State licensed race tracks and the wagering on the races held at those tracks." It claims that simulcasts from one licensed race track to another are a mere variation of that. However, the authorization for licensed racing at licensed race tracks does not state that the wagering may be at some other licensed track and such a result was never intended. The voters who approved the language of the 1939 amendment which had specific restrictions presented to them, including limiting racing to daylight hours and certain days did not approve the kind of betting contemplated by simulcasts or the "restrictions and control thereof." *N.J. Const.* (1947), Art. IV, § VII, par. 2.

Nor am I persuaded that the changes in the state of the art with respect to television and computers warrants a change in the interpretation of the statute or the Constitutional provision. It may, on the other hand, warrant further consideration of the voters. Certainly in both 1939 and 1947 the radio and telegraphic transmission of information was well known. At the time of the adoption of our present Constitution by the voters

in November 1947, television was not an unknown invention. In my view, the proposal under review exceeds what was contemplated by the voters when they approved the 1947 Constitution which had continued the gambling theretofore authorized by the 1939 amendment with respect to the "specific kind, restrictions and control" of pari-mutuel wagering. Hence, I would hold that simulcast wagering cannot be legally undertaken without the approval of a majority of the voters of this State at a general election.

The recent enactment of *L.* 1983, *c.* 340 on a temporary and interim basis, does not serve to legalize simulcast wagering during the period prior to the question being voted upon by the people. Its adoption to be effective on an interim basis [2] before the November 1984 election perhaps presumes voter approval. Likewise, the enactment of chapter 340 perhaps prematurely amends *N.J.S.A.* 5:5–62. Such action appears to fortify the Attorney General's position that so-called inter-track simulcast wagering is in effect a form of off-track betting, with other licensed race tracks in the State in effect constituting the "off-track" betting parlors. The enactment of chapter 340 and the requirement that it be submitted for approval by the voters at the general election to be held in November 1984 may also be viewed as a belated attempt to comply with the provision of *N.J.Const.* (1947), Art. IV, § VII, par. 2 requiring that gambling that has not heretofore been submitted to the voters as to "specific kind, restrictions and control" must be "submitted to, and authorized by a majority of the votes cast thereon by, the legally qualified voters of the State voting at a general election...." The premature effective date was perhaps a recognition of potential exposure to criminal laws. Indeed, if this is not so, then according to the very wording of the ballot ques-

---

[2]The effective date provision in section 15 of *L.* 1983, *c.* 340 reads:
> This act shall take effect immediately, but shall expire on January 1, 1985 unless approved by the voters at the general election held in November, 1984 as provided in section 14 of this act.

tion it would seem that if the statute is *not* approved by the voters, either simulcasts could not thereafter be held, or it would have to be argued that the people were deceived and that there was no need to submit this question to the voters. The language of the question to be placed on the ballot and its "Interpretive Statement" convey the clear meaning to the voters that they are being asked to approve simulcasts. As a corollary there is the further clear implication that heretofore simulcast wagering has not been approved. The question and statement are contained in Section 14 of *L.* 1983, *c.* 340 in the following form:

| | | |
|---|---|---|
| | Yes. | INTERTRACK HORSE RACE WAGERING "SIMULCAST" <br><br> Should the Intertrack Wagering Act and amendments to the horse racing laws, which authorize the transmission of horse races conducted at one race track, simultaneously by picture to another or other race tracks, and the wagering thereon, all as regulated by the State, be approved? |
| | No. | INTERPRETIVE STATEMENT <br><br> Approval of this act would authorize horse race tracks to transmit and receive pictures of races conducted simultaneously with that transmission. These "simulcasted" races would be wagered upon at the race tracks receiving the transmission. Simulcasts would be licensed and regulated by the New Jersey Racing Commission. |

Hence, the purported amendment to *N.J.S.A.* 5:5–62 which would eliminate the restrictive language requiring betting to be held at the race track at which the race was held[3] would be

---

[3]*L.* 1983, *c.* 340 § 11, deletes from *N.J.S.A.* 5:5–62 the language contained in brackets and adds the emphasized language as follows:

> [Any] *A* permit holder [conducting a horse race meeting under this act] may provide a place or places in the race meeting grounds or enclosure at which such holder of a permit may conduct and supervise the parimutuel

ineffective unless and until the voters approved the video simulcasts at a general election. If the voters approve the provisions of *c.* 340 in November 1984, then simulcast betting restricted to legalized tracks would be authorized.

Accordingly, I would reverse the determination of the trial judge and hold that pari-mutuel betting by video simulcasts is prohibited by our Constitution unless and until a majority of the voters authorize it in accordance with the provisions of our Constitution.

---

system of wagering by patrons on the result of the horse races conducted by such permit holder at [such] *a horse race meeting or on the result of simulcast horse races as provided by the "Intertrack Wagering Act," P.L. . . . . . . . . ., c. . . . (C. . . . . . . . .) (now pending before the Legislature as Senate Bill No. 3585 of 1983),* and such parimutuel system of wagering upon the result of such horse races [held at such horse race meeting and within such race track and at such horse race meeting] shall not under any circumstances, if conducted under the provisions of this act and in conformity thereto, be held or construed to be unlawful, other statutes of the State of New Jersey to the contrary notwithstanding. Such place or places so provided in conformity with this section shall be equipped with such automatic ticket issuing and vending machines and with adding machine equipment capable of accurate and speedy determination of the amount of money in each pool and on each horse and the amount of award or dividend to winning patrons and displaying the same to the patrons. Such machine shall further be equipped with automatic or hand operated machinery suitable for displaying on the mutuel board across the track, in plain view of the public, the total amount of sales on each and every race and the amount of award or dividend to winning patrons.