OPINION OF THE COURT
Joan B. Lefkowitz, J.
Plaintiff sues for declaratory relief that section 318 (4) of the Racing, Pari-Mutuel Wagering and Breeding Law is unconstitutional. Seven causes of action are asserted in the complaint and four theories are advanced against the legislation. Plaintiff moves for summary judgment and defendant purports to cross-move for judgment dismissing the complaint but has failed to submit a notice of cross motion (CPLR 2215). The parties are in accord, however, that no triable issues of fact exist.
Prior to an amendment in 1988, section 318 (4) of the Racing, Pari-Mutuel Wagering and Breeding Law did not explicitly authorize imposition of a tax on plaintiffs harness racing fees received for simulcasting its races to State of Connecticut offtrack betting operators.* However, the racing board imposed such a tax, which was declared unconstitutional in 1986 by the *458 Supreme Court, Westchester County, and that determination was affirmed by the Appellate Division, Second Department, in 1987, on the ground that the racing board did not have authority to impose a tax. (Yonkers Racing Corp. v State of New York, 131 AD2d 565 [2d Dept 1987].)
Thereafter, effective July 19, 1988, by chapter 261 of the Laws of 1988, section 318 (4) of the Racing, Pari-Mutuel Wagering and Breeding Law was amended to add the last sentence which legislatively imposes a tax. The statute reads: “4. Notwithstanding any other provisions of this chapter, there shall be no pari-mutuel tax imposed upon the compensation received by any harness racing association or corporation in consideration for (a) permission to have wagering conducted outside this state on races run by such association or corporation, and (b) the simulcasting outside this state of races run by such association or corporation, except for such permission or such simulcasting as may be granted to an off-track betting operator in the state of Connecticut by a harness racing association or corporation located in Nassau or Westchester county. Any such association or corporation so simulcasting to an off-track betting operator in the state of Connecticut shall pay to the New York commissioner of taxation and finance a reasonable tax for such permission and privilege for such simulcasting, which is hereby levied, at the following rates: one and one-tenth per centum of total daily regular and multiple bets; three and one-tenth per centum of total daily exotic bets; and three and one-half per centum of total daily super exotic bets.”
Plaintiff has paid the tax imposed on its out-of-State simulcast transmissions to Connecticut, since the inception of the amendment, under protest. The within declaratory judgment action was commenced in June 1995. The complaint alleges that during the tax period through January 1995, plaintiff paid about $1,500,000 in tax under protest. It may be assumed that for the ensuing period from January 1995 to date at least an additional $1,000,000 in taxes was paid by reason of the statute.
Plaintiff has entered into a series of contracts with an entity in Connecticut to transmit audio-video data from Yonkers Raceway, which in turn is retransmitted in Connecticut by the recipient to off-track betting locations in Connecticut. For this *459 service plaintiff is paid a fee. The parties have stipulated that the current contract between plaintiff and the Connecticut entity, which was extended to December 31, 2000, shall be deemed applicable to the underlying proceeding.
Plaintiff claims that the tax is unconstitutional because it: (1) discriminates against interstate commerce, (2) is barred by Federal preemption, (3) violates the Equal Protection Clauses of the Federal and State Constitutions, and (4) improperly attempts to tax events outside New York State. The defendant argues that no violation of constitutional magnitude has occurred under any claim presented on this motion.
Taking the arguments advanced by plaintiff in inverse order, it is clear that the last argument is without merit. What is taxed is an event or transaction originating in New York, not something beyond its borders. Under plaintiff’s theory, New York could not tax a company manufacturing products here but shipped beyond its borders while in-State companies shipping intrastate goods are taxed. Clearly, plaintiff’s argument that the tax herein is imposed outside the State is wrong. (Saratoga Harness Racing v City of Saratoga, 55 AD2d 295 [3d Dept 1976], affd 44 NY2d 980 [1978].)
The equal protection argument has appeal, on its face as the statute applies only to Yonkers Raceway in fact, though as evidenced in the Bill Jacket to the amendment when the legislation was proposed, Roosevelt Raceway in Nassau County would have also been affected. However, when the legislation was enacted in 1988, Roosevelt Raceway ceased operations at or about that time. Nevertheless, the equal protection argument fails in light of the decision in Matter of Roosevelt Raceway v County of Nassau (18 NY2d 30 [1966]) which upheld a statute that imposed a substantially larger tax on Yonkers and Roosevelt Raceway operations than upon other harness operations in the State. The Court of Appeals sustained the constitutionality of the legislation and rejected an equal protection violation argument (18 NY2d 30, 37, 39-41). Therefore, plaintiff’s third argument fails in light of the aforementioned authority.
Plaintiff’s second argument is that the tax is preempted by the Supremacy Clause of the Federal Constitution (art VI, cl 2) because Congress in the Interstate Horseracing Act of 1978 (15 USC § 3001 et seq.) has legislated in the field. However, as argued by defendant, all that Congress has done is state that Federal policy is to ensure that the “States will continue to cooperate with one another in the acceptance of *460 legal interstate wagers” on horse races (15 USC § 3001 [a] [3]). There is no preemption here as Congress has not fully legislated on the subject nor is there any conflict between the tax imposed and the policy set forth in the Federal statute. (Atlantic City Racing Assn. v Attorney Gen., 189 NJ Super 549, 461 A2d 178, 181 [Super Ct 1983], affd on opn below 198 NJ Super 247, 486 A2d 1261 [App Div 1983], revd on other grounds 98 NJ 535, 489 A2d 165 [1985]; see, Matter of Marino v Town of Ramapo, 68 Misc 2d 44, 57-60 [Sup Ct, Rockland County 1971].) Indeed, at bar, the contract is with an agency of the State of Connecticut and there is no proof of any violation or undue burden with regard to the Interstate Horseracing Act.
Plaintiffs first argument that the tax imposes an unconstitutional burden on interstate commerce requires analysis.
Pursuant to article I (§ 8, cl [3]) of the Federal Constitution, Congress is authorized to regulate commerce among the States. It is a violation of this provision for a State to enact laws that unduly discriminate or burden interstate commerce. (Smith, State Discriminations Against Interstate Commerce, 74 Cal L Rev 1203 [1986].)
To be valid, a State tax affecting interstate commerce must: (1) have a sufficient nexus to the activity being taxed in the State, (2) be fairly apportioned, (3) not discriminate against interstate commerce, and (4) be fairly related to the benefits provided. (Complete Auto Tr. v Brady, 430 US 274, 287-288 [1977]; 3 Antieau and Rich, Modern Constitutional Law §§ 43.34-43.40 [2d ed].) “The key to such cases is understanding that states should not be allowed to develop tax schemes which either burden out-of-state transactions or give favored treatment * * * to transactions which take place within the state.” (3 Antieau and Rich, op. cit., § 43.38, at 89.) A State is not permitted to impose a tax that discriminates against interstate commerce and the fact that the tax may fall on an instate entity, as here, rather than upon out-of-State customers “makes no analytic difference.” (Camps Newfound/Owatonna v Town of Harrison, 520 US 564, 580 [1997].) A “State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.” (Armco Inc. v Hardesty, 467 US 638, 642 [1984].) “Once a state tax is found to discriminate against out-of-state commerce, it is typically struck down without further inquiry.” (Chemical Waste Mgt. v Hunt, 504 US 334, 342 [1992].)
The narrow focus of our inquiry herein as presented by the parties relates to the discriminatory aspects, if any, of the subject tax.
*461 “[A] facially discriminatory tax may still survive Commerce Clause scrutiny if it is a truly ‘ “compensatory tax” designed simply to make interstate commerce bear a burden already borne by intrastate commerce.’ ” (Fulton Corp. v Faulkner, 516 US 325, 331 [1996].) The terms “compensatory tax” and “complementary tax” describe the same phenomenon: “a tax on interstate commerce ‘complements’ a tax on intrastate commerce to the extent that it ‘compensates’ for the burdens imposed on intrastate commerce by imposing a similar burden oii interstate commerce.” (Fulton Corp. v Faulkner, 516 US 325, 331, n 2, supra.)
To sustain a discriminatory tax, the burden of proof is on the State to: (1) identify the intrastate burden it is attempting to compensate for, (2) show that the tax on interstate commerce is roughly approximate to the tax on intrastate commerce, and (3) show that the events taxed are substantially equivalent. (Fulton Corp. v Faulkner, 516 US 325, 332-333, supra; Oregon Waste Sys. v Department of Envtl. Quality, 511 US 93, 103 [1994].) The Federal courts are reluctant to recognize new compensatory categories and have generally found functional equivalence only in sales and use taxes. (Fulton Corp. v Faulkner, 516 US 325, 338, 342-343, supra.)
At bar, the defendant has failed to demonstrate any roughly equivalent tax on intrastate simulcasting of horse races to in-State off-track betting locations and plaintiffs claim that no such tax exists is not refuted by the State by identification of the source of such a tax. Therefore, the subject tax is discriminatory and not compensatory and violates the Commerce Clause of the Federal Constitution. It is declared invalid.
The motion for summary judgment is granted and section 318 (4) of the Racing, Pari-Mutuel Wagering and Breeding Law is declared unconstitutional in violation of the Commerce Clause and defendant is enjoined from further collections thereunder. Plaintiff has indicated it will sue for return of the taxes paid in the appropriate forum, the Court of Claims. The alleged cross motion is denied.

 Simulcast “means the telecast of live audio and visual signals of running, harness or quarter horse races conducted in the state for the purposes of pari-mutuel wagering.” (Racing, Pari-Mutuel Wagering and Breeding Law *458 § 1001 [a].) The transmission of such signals between entities in different States is a form of interstate commerce. (20 NY Jur 2d, Constitutional Law, § 147.)