OPINION OF THE COURT
 

 Titone, J.
 

 Plaintiff brought this action to challenge a City of Albany ordinance which imposes a special tax on "transient” retailers who operate at temporary business sites. At the heart of plaintiff’s complaint is its claim that the tax discriminates in favor of local retail businesses and therefore violates the Commerce Clause of the Unites States Constitution (US Const, art I, § 8, cl [3]). The City, in contrast, contends that the ordinance is inoffensive to the Constitution because it applies evenhandedly to both in-State and out-of-State transient retailers and serves a legitimate public purpose. Having reviewed the relevant Supreme Court precedent, we conclude that the challenged ordinance is unconstitutionally discriminatory and that, accordingly, it is invalid.
 

 Plaintiff is an Indiana corporation authorized to transact business in this State and 40 others. Plaintiff’s business, the wholesaling and retailing of hardware, electrical tools and re
 
 *156
 
 lated consumer products, is conducted at prescheduled sales held over three- to four-day periods. Plaintiff generally reserves facilities in a particular community, conducts advance advertising in that community and then makes its sales from a temporary location within the community. The merchandise is brought onto the sale site before the sale and any unsold goods are taken to the next site when the local sale is over. It is undisputed that plaintiff collects sales tax and files sales tax returns for the transactions it completes within the State.
 

 The present dispute arose from a sale plaintiff conducted between August 20 and August 23, 1992 at a rented site within the City of Albany. Pursuant to the challenged ordinance (Albany City Code §§ 7-240, 7-243), the City required plaintiff to obtain a transient business license, to pay a tax calculated on the basis of its gross sales and to post a $2,500 bond to insure compliance with its tax obligation. The amount of the tax, $3,031.16, was calculated by reducing plaintiff’s gross sales ($283,451.43) by the City’s applicable real property tax equalization rate (8.75%) and applying the City’s 1992 real property tax rate ($134.31 per $1,000) to the resulting "assessed value” ($24,802).
 
 [1]
 
 Plaintiff paid the tax under protest and then commenced the present action, seeking, among other things, a declaration that the ordinance violates the Commerce Clause.
 

 On plaintiff’s motion for summary judgment, the Supreme Court rejected plaintiff’s arguments and dismissed its causes of action based on the Commerce Clause
 
 (but cf., Lanza v Wagner,
 
 11 NY2d 317, 334). Relying on a line of Supreme Court decisions known as the "peddler” cases
 
 (e.g., Machine Co. v Gage,
 
 100 US 676), the court initially concluded that the challenged ordinance is "even-handed” and therefore not discriminatory because it differentiates not between in-State and out-of-State goods, but rather between permanent and transient retailers regardless of the geographical area in which they operate (163 Misc 2d 723, 729-731). Since it concluded that the ordinance does not involve "direct” discrimination, the court went on to consider whether the ordinance’s "indirect or incidental effect” on interstate commerce is outweighed by the local benefit it confers
 
 (id.,
 
 at 732). The local benefit, the court reasoned, is to produce revenues "by requiring transient retailers to pay their
 
 *157
 
 fair share of municipal costs already paid by permanent retailers in the City”
 
 (id.,
 
 at 732). Noting that plaintiff had not shown that it had been required to pay more than its "fair share,” the court upheld the ordinance on the theory that its "de minimis burden” on commerce does not exceed its legitimate governmental purpose
 
 (id.,
 
 at 732).
 

 The Appellate Division affirmed the Supreme Court’s order on the basis of that court’s opinion. Having stipulated to the discontinuance of its remaining cause of action based on the Equal Protection Clause of the Fourteenth Amendment, plaintiff then appealed as of right from the stipulation, deemed a judgment, bringing up for review the prior nonfinal Appellate Division order
 
 (see, Voorheesville Rod & Gun Club v Tompkins Co.,
 
 82 NY2d 564, 568; CPLR 5601 [d]).
 

 The Albany City ordinance challenged in this proceeding imposes a tax burden on "transient” retailers that is not imposed on retailers who operate from fixed locations within the City.
 
 [2]
 
 The local law was enacted pursuant to the enabling provisions of General Municipal Law § 85-a, which gives localities the power "to provide that a tax shall be levied upon all persons or corporations conducting transient retail businesses therein * * * based upon the gross amount of sales and [calculated] at the same rate as other property is taxed for the year [within the locality].”
 

 Adopted in 1917 (L 1917, ch 199, § 1), General Municipal Law § 85-a supplemented former section 85, which, until 1968, authorized municipalities to impose a fixed "license” fee of up to $100 on transient retailers engaging in fire or bankruptcy liquidation sales. Former section 85 was held unconstitutional in
 
 People ex rel. Moskowitz v Jenkins
 
 (202 NY 53, 58, 59-60) because of its impermissible purpose "to safeguard * * * local shopkeepers from competition” as well as its "arbitrary and unreasonable” character as a tax. To remedy these flaws, the Legislature broadened the statute’s coverage to include all transient retailers. Further, it attempted to rationalize the tax by linking it to the merchant’s gross receipts and the local real property tax rate
 
 (see,
 
 18 NY St Dept Rep 444, 446 [1918]).
 

 
 *158
 
 Despite the 80 years that have elapsed since its enactment, this Court has not yet had occasion to address the constitutionality of General Municipal Law § 85-a or of any of the municipal ordinances that may have been adopted under its authority. Indeed, this proceeding represents the first reported case in which a local transient-retailer tax ordinance has been challenged. As we did in
 
 Moskowitz,
 
 we now conclude that the tax cannot be sustained, although, unlike in
 
 Moskowitz,
 
 our current conclusion is based solely on modern Commerce Clause principles.
 

 The literal language of the Commerce Clause contains only an affirmative grant of authority to Congress. The Supreme Court, however, has long construed the Clause to imply a corresponding prohibition against State measures that unduly or discriminatorily burden interstate commerce
 
 (e.g.,. Cooley v Board of Wardens,
 
 12 How [53 US] 299, 319;
 
 Gibbons v Ogden,
 
 9 Wheat [22 US] 1, 197-209;
 
 see, Oklahoma Tax Commn. v Jefferson Lines,
 
 514 US 175, 179-181;
 
 Quill Corp. v North Dakota,
 
 504 US 298, 309;
 
 Matter of Orvis Co. v Tax Appeals Tribunal,
 
 86 NY2d 165, 170-171;
 
 see generally,
 
 Enrich,
 
 Saving the States From Themselves: Commerce Clause Constraints on State Tax Incentives for Business,
 
 110 Harv L Rev 378, 424-425). This "dormant” or "negative” aspect of the Commerce Clause has a meandering judicial history. However, at this point in the jurisprudence surrounding the Commerce Clause, a clear set of governing principles has emerged.
 

 A regulation or tax that discriminates in favor of local economic interests is invalid unless it is narrowly tailored to accomplish a compelling local purpose or, in the case of a tax, can meet the stringent standards of the "compensatory tax” doctrine
 
 (see, C & A Carbone v Clarkstown,
 
 511 US 383, 390;
 
 Oregon Waste Sys. v Department of Envtl. Quality,
 
 511 US 93;
 
 Associated Indus. v Lohman,
 
 511 US 641, 647-650). Under this principle, local statutes that facially discriminate against interstate trade are subject to a "virtually
 
 per se
 
 rule of invalidity” and are " 'routinely struck down’ ” on the theory that local economic protectionism is incompatible with the maintenance of a single national economic unit
 
 (Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 98-100;
 
 see, West Lynn Creamery v Healy,
 
 512 US 186, 192-193, quoting
 
 New Energy Co. v Limbach, 486 US 269,
 
 273-274;
 
 Associated Indus. v Lohman, supra,
 
 at 647;
 
 Hughes v Oklahoma,
 
 441 US 322, 337;
 
 Hood & Sons v Du Mond,
 
 336 US 525, 537-538). In contrast, local laws that regulate evenhandedly with only incidental ef
 
 *159
 
 fects on interstate commerce are generally upheld unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits”
 
 (Pike v Bruce Church, Inc.,
 
 397 US 137, 142;
 
 accord, Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 99). Thus, whether a particular local regulation or tax is discriminatory or evenhanded is a critical inquiry.
 

 The Supreme Court has repeatedly stressed that a benevolent underlying purpose cannot justify a facially discriminatory regulation or tax
 
 (Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 100;
 
 Chemical Waste Mgt. v Hunt,
 
 504 US 334, 340-341;
 
 see also, Philadelphia v New Jersey, 437
 
 US 617, 626). Under the existing case law, a local regulation or tax, is discriminatory without regard to its underlying purpose when it entails "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter”
 
 (Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 99).
 

 In the courts below, the challenged Albany City ordinance was deemed "even-handed” and not discriminatory because it was imposed on all transient retailers and did not differentiate among them "based on the in- or out-of-State origin of the merchandise sold * * * or the location of the transient retailer”
 
 (supra,
 
 163 Misc 2d, at 729). In the lower courts’ view, the fact that the tax could be imposed upon a New York State transient retailer was dispositive of plaintiff’s contention that the tax is facially discriminatory. This analysis, however, is based on an overly narrow view of what constitutes "discriminatory” legislation.
 

 More than half a century ago, the Supreme Court made clear that a local law is impermissibly discriminatory if it imposes a burden on interstate commerce and affords local merchants an economic advantage
 
 (Nippert v
 
 Richmond, 327 US 416, 432). The Court further held that the discriminatory character of the law is not altered because its burden may also fall upon some local businesses
 
 (id.).
 
 The principle was subsequently applied without extended discussion in
 
 Dean Milk Co. v Madison
 
 (340 US 349, 354, n 4 [it is "immaterial that Wisconsin milk from outside the Madison area is subjected to the same proscription as that moving in interstate commerce”]), and the same point was forcefully made in
 
 Fort Gratiot Sanitary Landfill v Michigan Dept. of Natural Resources
 
 (504 US 353, 361-363;
 
 accord, Bacchus Imports v Dias,
 
 468 US 263).
 

 
 *160
 
 One of the Supreme Court’s most recent expositions on the subject can be found in
 
 C & A Carbone v Clarkstown (supra),
 
 a case involving an ordinance that required all nonhazardous solid waste within the Town of Clarkstown to be deposited for processing at a particular local transfer station. The Court expressly rejected the Town’s argument that the ordinance did not discriminate because it did not "differentiate solid waste on the basis of its geographic origin”
 
 (id.,
 
 at 390-391). On this point, the Court stated that "[t]he ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition”
 
 (id.,
 
 at 391). Citing
 
 Dean Milk Co. v Madison (supra)
 
 and reiterating that "[discrimination against interstate commerce in favor of local business * * * is
 
 per se
 
 invalid”, the
 
 C & A Carbone
 
 Court stated that the challenged law was discriminatory "for it allow[ed] only the favored [local] operator to process waste [within the town]” (511 US, at 391, 392,
 
 supra).
 

 [3]
 

 The principle on which the
 
 C & A Carbone
 
 holding rests is directly applicable in this case. Albany’s transient-retailer tax is imposed on all merchants who do not operate from a fixed location within the City’s borders and, consequently, it confers an economic advantage on a particular class of local businesses, i.e., those that ply their wares from fixed locations. Since, by definition, the class of favored business includes only locals, the ordinance cannot be considered "even-handed” and is, thus, per se invalid
 
 (see, id.,
 
 at 392;
 
 see also, Bacchus Imports v Dias, supra).
 

 Contrary to the Attorney-General’s argument, we are not persuaded that a different analysis is mandated in this case by the Supreme Court’s holding in
 
 Dunbar-Stanley Studios v Alabama
 
 (393 US 537).
 
 Dunbar-Stanley
 
 involved a challenge to a State license-fee ordinance that charged transient photographers $5 dollars per week to operate in a particular location while charging fixed-location photographers an annual fee of between $3 and $25 depending on the locality’s size
 
 (id.,
 
 at 538, n 1). The bulk of the Supreme Court’s opinion in
 
 Dunbar-Stanley
 
 is devoted to a now-outdated analysis of whether the
 
 *161
 
 taxed activity was properly classified as local or interstate
 
 (id.,
 
 at 539-541;
 
 see,
 
 at 162-163,
 
 infra).
 
 Only in the last paragraph does the opinion address the argument that the challenged ordinance was discriminatory. On that question, the Court stated only that there was no basis on the record before it "for concluding that the $5 per week tax on transient out-of-state photographers is so disproportionate to the tax imposed on photographers with a fixed location as to bear unfairly on the former”
 
 (id.,
 
 at 542). Thus, although the Court noted in passing that the tax was levied "equally upon all transient * * * photographers whether their travel is interstate or entirely within the State”
 
 (id.,
 
 at 542), the gist of the Court’s holding was that the challenged ordinance was not discriminatory because it did not, in fact, give fixed-location local photographers a demonstrable economic advantage. This holding is a far cry from the City of Albany’s present contention that despite the benefits it confers on local businesses at the expense of competitors operating in interstate commerce, a transient-retailer tax may be sustained as "even-handed” and not discriminatory if a portion of its burden also falls upon some local businesses.
 
 [4]
 

 Further, even assuming that the decision in
 
 Dunbar-Stanley
 
 means what the Attorney-General says it means, we would nonetheless conclude that the force of the decision has been vitiated by more recent case law which unequivocally establishes that a law which discriminates against interstate commerce cannot be upheld on the ground that some in-State entities are also affected
 
 (e.g., C & A Carbone v Clarkstown, supra; Fort Gratiot Sanitary Landfill v Michigan Dept. of Natural Resources, supra,
 
 at 361-363;
 
 Bacchus Imports v Dias, supra).
 
 Significantly, in the nearly three decades that have elapsed since
 
 Dunbar-Stanley
 
 was decided, the Supreme Court has not
 
 *162
 
 once cited that case for the proposition that the Attorney-General urges.
 

 Similarly unpersuasive as authority for upholding the Albany City ordinance are the so-called "peddler” cases on which the lower courts relied (e.g.,
 
 Machine Co. v Gage,
 
 100 US 676,
 
 supra).
 
 Before 1977, the disposition of Commerce Clause challenges to local tax ordinances depended principally upon whether the taxed event was deemed integral to interstate commerce or was instead considered a local activity
 
 (see, Memphis Steam Laundry v Stone, supra,
 
 at 392-394; 2 Rotunda and Nowak,
 
 op. cit.,
 
 at 244-246;
 
 compare, Robbins v Shelby Taxing Dist., supra, with Singer Sewing Mach. Co. v Brickell,
 
 233 US 304;
 
 Emert v Missouri,
 
 156 US 296; and
 
 Machine Co. v Gage, supra).
 
 In one line of decisions, the "drummer” cases, the Supreme Court held that a tax on the solicitation of orders for out-of-State goods was "a tax on interstate commerce itself’ and was therefore unconstitutional
 
 (Robbins v Shelby Taxing Dist., supra,
 
 at 497;
 
 see, Memphis Steam Laundry v Stone, supra,
 
 at 392-393, and nn 7-8 [citing cases]). In contrast, the "peddler” line of cases upheld taxes on the activities of itinerant "hawkers” who sold and delivered goods in-State, "whether * * * from a fixed location or from a wagon,” on the theory that such activity was "an essentially intrastate process”
 
 (Memphis Steam Laundry v Stone, supra,
 
 at 391, 392, 394;
 
 see, Breard v Alexandria,
 
 341 US 622, 636;
 
 Caskey Baking Co. v Virginia,
 
 313 US 117;
 
 McGoldrick v Berwind-White Co.,
 
 309 US 33, 58;
 
 Wagner v City of Covington,
 
 251 US 95;
 
 Baccus v Louisiana,
 
 232 US 334;
 
 Emert v Missouri, supra; Machine Co. v Gage, supra).
 

 Whether the present case is "more conceptually and factually similar” to the latter line, as the Supreme Court below opined
 
 (supra,
 
 163 Misc 2d, at 731), is of no analytical utility, however, since the principles and distinctions discussed in the "peddler” and "drummer” cases have been superseded by the modern approach to Commerce Clause taxation questions that was first outlined in
 
 Complete Auto Tr. v Brady
 
 (430 US 274;
 
 see, Matter of Orvis Co. v Tax Appeals Tribunal, supra,
 
 at 173). In
 
 Complete Auto Tr.,
 
 the Supreme Court held that the foregoing older lines of cases, which drew formalistic lines between taxes on interstate commerce and taxes on in-State activities, were no longer to be followed. Instead, State taxes on interstate activities were to be upheld if four specific criteria were satisfied: (1) the taxed activity must have a substantial nexus with the taxing jurisdiction, (2) the tax must be fairly ap
 
 *163
 
 portioned, (3) the taxing legislation must not discriminate against interstate commerce and (4) the amount of the tax must be fairly related to the services provided by the taxing jurisdiction
 
 (id.,
 
 at 287-289; 2 Rotunda and Nowak,
 
 op. cit.,
 
 at 246-249, 250-253;
 
 see, Tyler Pipe Indus. v Department of Revenue,
 
 483 US 232 [applying
 
 Complete Auto Tr.
 
 test and invalidating State manufacturing tax as discriminatory];
 
 American Trucking Assns. v Scheiner,
 
 483 US 266 [invalidating local fee and tax as discriminatory and unapportioned];
 
 Armco Inc. v Hardesty,
 
 467 US 638 [invalidating local gross receipts tax as discriminatory];
 
 Commonwealth Edison Co. v Montana,
 
 453 US 609 [applying
 
 Complete Auto Tr.
 
 test to mining tax]). These criteria make the "peddler” and "drummer” cases, which are based on a repudiated analysis, irrelevant.
 

 Finally, since it does not satisfy the criteria for a "compensatory” tax, the discriminatory Albany City tax on transient retailers cannot be justified on the theory that it merely places such retailers on an equal footing with fixed-location retailers who pay for local services through other forms of taxes
 
 (see generally, Chemical Waste Mgt. v Hunt,
 
 504 US 334, 346, n 9,
 
 supra).
 
 A tax that burdens interstate commerce and favors local interests can be upheld as "compensatory” only if the taxing jurisdiction first identifies the specific intrastate tax responsibility for which it is attempting to compensate and then bears the burden of showing that the events on which the interstate and intrastate taxes are based are " 'substantially equivalent’ ” in that they are "sufficiently similar in substance to serve as mutually exclusive 'prox[ies]’ for each other”
 
 (Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 102-105, quoting
 
 Armco Inc. v
 
 Hardesty, 467 US 639, 643,
 
 supra).
 
 Further, the taxing jurisdiction must demonstrate that the tax on interstate commerce roughly approximates and does not exceed the amount of the intrastate tax
 
 (Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 103).
 

 The City of Albany argues that its transient-retailer tax is designed to approximate the tax burden that falls on fixed-location retailers whose property tax bill subsidizes the local services on which all merchants and citizens rely. However, unlike in the case of sales and compensating use taxes
 
 (see generally, Henneford v Silas Mason Co.,
 
 300 US 577), there is no relationship at all between the "taxable event” that triggers the obligation to pay real property taxes, i.e., the ownership of property, and the "taxable event” that triggers the obligation to pay the transient-retailer tax, i.e., the sale of goods from a
 
 *164
 
 temporary location. Further, there is no necessary correlation between the amount to be paid for real estate taxes, which are measured by the assessed value of the parcel and improvements, and the amount to be paid under the transient-retailer tax, which is calculated by reference to the merchant’s gross receipts. The fact that the locality’s real property tax and equalization rates are used in the computation of both taxes does not change this fundamental disparity, since the base figures to which those rates are to be applied are not "roughly equivalent” and cannot serve as stand-ins for each other
 
 (see, Oregon Waste Sys. v Department of Envtl. Quality, supra,
 
 at 103-104).
 

 In the final analysis, the City’s attempt to justify the transient-retailer tax as a substitute for a tax on real property must fail because it rests on a patently fallacious assumption. Although some fixed-location merchants support local services through their direct payment of real estate taxes, there are a substantial number of such merchants, including the vast majority of shopping mall tenants, whose retail sites are leased and who therefore are not directly responsible for property taxes. To be sure, these lessee-merchants may indirectly absorb some portion of the property owner’s property tax bill through their rent payments. The same observation can be made, however, about transient retailers like plaintiff, who ordinarily operate from temporary rented quarters and, consequently, make rental payments that take the local real property taxes into account.
 
 [5]
 
 Thus, payment of property taxes is not a valid factor for differentiating between fixed-site merchants and transient retailers, and, accordingly, that factor cannot be cited as justification for the imposition of a special tax on the latter’s gross receipts.
 

 In sum, the challenged tax cannot be tolerated under the Constitution because it impedes free and equal access to local demand and thus strikes at the heart of the fundamental values that the Commerce Clause was designed to protect
 
 (see, C & A Carbone v Clarkstown, supra).
 
 Inasmuch as the City of Albany’s transient-retailer tax is discriminatory and cannot be rationalized as a compensatory tax that operates to equalize the tax burdens that local retailers must bear, it is invalid, and the contrary ruling of the courts below dismissing plaintiff’s Commerce Clause cause of action must be reversed.
 
 *165
 
 Further, since the dismissal of plaintiffs third cause of action for relief under 42 USC §§ 1983 and 1988 was predicated on the lower courts’ erroneous assumption that the Commerce Clause had not been violated, our determination here requires that claim’s reinstatement.
 

 Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, plaintiffs motion for partial summary judgment granted, judgment granted declaring the subject ordinance unconstitutional in violation of the Commerce Clause of the United States Constitution and directing the City of Albany to refund to plaintiff any taxes paid under protest, plaintiffs third cause of action reinstated, and the case remitted to Supreme Court for further proceedings on the third cause of action.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . The ordinance is designed to tax a transient retailer’s gross sales receipts "at the same rate as other property is taxed for the year in [the] city” (Albany City Code § 7-238). In other words, the transient retailer’s gross receipts are treated as if they were real property and taxed accordingly.
 

 [2]
 

 . A "transient retail business” is defined in the ordinance as "one conducted in a store, hotel, house, building or structure for the sale and retail of goods, wares or merchandise * * * and which is intended to be conducted for a temporary period of time and not permanently. If the place in which a business is conducted and is rented or leased for a period of six (6) months or less, such fact shall be presumptive evidence that the business carried on therein is a transient business” (Albany City Code § 7-243).
 

 [3]
 

 . The
 
 C & A Carbone
 
 Court left room for upholding a facially discriminatory law "in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest”
 
 (supra,
 
 511 US, at 392, citing
 
 Maine v Taylor,
 
 477 US 131). Neither the City nor the Attorney-General has argued that the challenged revenue-raising measure can pass constitutional muster under this exacting standard.
 

 [4]
 

 . The only suggestion in
 
 Dunbar-Stanley
 
 that the Court considered the proposition the Attorney-General now advances appears in a brief footnote: "Even assuming that” the transient photographer’s assessed taxes "were almost twice what a fixed-location photographer would have had to pay for the same period * * * we are not prepared to say that this relative burden is improper, given the differences between the two ways of carrying on the business” (393 US, at 542, n 5).
 

 Whatever else this rather cryptic statement may mean, it cannot sensibly be understood to mean that differentiating between transients and fixed-location merchants is a constitutionally accepted practice, since such a holding would have entailed overruling a substantial body of well-established case law (see,
 
 e.g., Memphis Steam Laundry v Stone,
 
 342 US 389;
 
 Best & Co. v Maxwell,
 
 311 US 454;
 
 Robbins v Shelby Taxing Dist.,
 
 120 US 489;
 
 see also,
 
 2 Rotunda and Nowak, Constitutional Law § 13.6 [a], at 245 [2d ed]).
 

 [5]
 

 . The fact that this plaintiff operated from a site that happens to be tax exempt is a fortuity that does not affect the analysis.