HOMIER DISTRIBUTING
CO. Plaintiff

v.

Carolyn STALEY, et al.   Defendants

No. 4:02–CV–464 GTE.

United States District Court,
E.D. Arkansas,
Little Rock Division.

Sept. 4, 2003.

James M. Johnstone, Thomas W. Kirby, Wiley, Rein & Fielding, Washington, DC, for Homier Distributing Company, Inc., plaintiff.

Patricia V. Bell, Arkansas Attorney General's Office, Karla Moore Burnett, Amanda Mankin Mitchell, Pulaski County Attorney's Office, David M. Fuqua, Hope, Fuqua & Campbell, P.A., Little Rock, for Larry Jegley, Hon., Prosecuting Attorney, Randy Johnson, Hon., Pulaski County Sheriff, Pulaski County, Arkansas, Carolyn Staley, Hon., Circuit County Clerk–Pulaski County, defendants.

## MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

The Plaintiff Homier Distributing Company, Inc. has sued Pulaski County and various county officials seeking a declaratory judgment that the Arkansas Transient Merchant Licensing Act of 1983, Ark. Code Ann. § 17–49–101 *et seq.,* is unconstitutional as violative of the Commerce Clause of the United States Constitution. The Plaintiff also seeks monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983, and fees and costs pursuant to 42 U.S.C. § 1988.

Because the material facts are not in dispute, the parties have submitted the legal issues to the Court on cross-motions for summary judgment without need for the scheduled court trial. After considering the parties' briefs, the summary judgment record, and the pertinent law, the Court is prepared to rule.

## I.   Background

.The Plaintiff is an Indiana corporation with its principal place of business in Indiana. The Defendants are Pulaski County, Circuit County Clerk Carolyn Staley, Prosecuting Attorney Larry Jegley and Sheriff Randy Johnson.[1]

---

1. Separate Defendants Pulaski County, Ms. Staley and Sheriff Johnson have opted not to respond to the Plaintiff's motion for summary judgment or file a cross-motion for summary

The Arkansas Transient Merchant Licensing Act of 1983 ("TMLA") became law on March 21, 1983. The parties have cited none, and the Court has found no case law interpreting the act. Thus, there does not appear to exist any reported case law addressing the constitutionality of the act.

The TMLA defines a "temporary or transient business" as "any business conducted for the sale or offer for sale of goods, wares, or merchandise which is carried on in any building, structure, motor vehicle, railroad car, or real estate for a period of less than six (6) months in each year." Ark.Code Ann. § 17–49–103(2). The act defines a "transient merchant" as

> any person, firm, corporation, partnership, or other entity which engages in, does, or transacts any temporary or transient business in the state, either in one (1) locality or in traveling from place to place in the state, offering for sale or selling goods, wares, merchandise, or services, and includes those merchants who hire, lease, use, or occupy any building, structure, motor vehicle, railroad car, or real estate for the purpose of carrying on such a business.

Ark.Code Ann. § 17–49–103(3).

The TMLA establishes, and requires county officials to implement, a regulatory regime for transient merchants operating in Arkansas. It is undisputed that the act does not apply to established retailers conducting sales from permanent locations.

The TMLA provides that it is "unlawful for any transient merchant to transact business in any county of this state unless the merchant and the owners of any goods, wares, or merchandise to be offered for sale or sold, if such are not owned by the merchant" have not first applied for and received a license from the county clerk for "each county in which the merchant desires to transact business." Ark.Code. Ann. §§ 17–49–106(a) & –107(a)–(b). The act further provides that the license fee is $250, and that said fee is received and retained by the county in which the application is made. Furthermore, the license "shall be accompanied by ... a cash bond or surety bond ... in the amount of two thousand dollars ($2,000) or five percent (5%) of the wholesale value of any goods, wares, merchandise, or services to be offered for sale, whichever sum is lesser." See Ark.Code Ann. § 17–494–109(a). Finally, on the license application, the transient merchant must name a registered agent for service who is a resident of the county. See Ark.Code. Ann. §§ 17–49–107(b)(4) & –108(a).

The failure to comply with the act's provisions is a criminal offense (a Class A misdemeanor). See Ark.Code Ann. § 17–49–106(b). The TMLA provides that "[i]t is the duty of the county sheriff and other law enforcement officers in each county and the prosecuting attorney for each county to enforce the [act's] provisions." Ark.Code Ann. § 17–49–105.

The TMLA provides that the license is valid only within the territorial limits of the issuing county. Furthermore, the license is valid only for ninety days. See Ark.Code Ann. § 17–49–110(b). The flat fee and bond requirement are equally applicable to a one-day sale as a ninety-day sale.

> The stated purpose of the TMLA is to:
> (1) Protect the public from improper sales techniques by providing for the licensing and regulation of transient merchants; and
> (2) Provide that the license fees, bonding requirements, and penalties pre-

---

judgment. These Defendants have chosen to rely upon the submissions of separate Defendant Mr. Jegley, who is represented by the Arkansas Attorney General's office. See Doc. # 37.

scribed in this subchapter for transient merchants shall be minimum license fees, bond requirements, and penalties and shall not be construed to limit or restrict the authority of counties, cities, and towns in the state to levy additional license fees and to require additional bonding for transient merchants engaging in business in counties, cities, and towns.

Ark.Code Ann. § 17–49–102.

The TMLA explains the necessity of the surety bond requirement:

(b) The surety bond shall be in favor of the State of Arkansas and shall assure the payment by the applicant of all taxes that may be due from the applicant to the state or any political subdivision of the state, the payment of any fines that may be assessed against the applicant or its agents or employees for violation of the provisions of this subchapter, and for the satisfaction of all judgments that may be rendered against the transient merchant or its agents or employees in any cause of action commenced by any purchaser of goods, wares, merchandise, or services within one (1) year from the date of the sale by the transient merchant.

(c) The bonds shall be maintained so long as the transient merchant conducts business in the county and for a period of one (1) year after the termination of the business. The bonds shall be released only when the transient merchant furnishes satisfactory proof to the county clerk that it has satisfied all claims of purchasers of goods, wares, merchandise, or services from the merchant and that all state and local sales taxes and other taxes have been paid.

Ark.Code Ann. § 17–49–109.

A number of sales are exempt from the purview of the TMLA. The act provides:

(a) The provisions of this subchapter shall not apply to:

(1) Sales at wholesale to retail merchants by commercial travelers or selling agents in the usual course of business;

(2) Wholesale trade shows or conventions;

(3) Sales of goods, wares, or merchandise by sample catalogue or brochure for future delivery;

(4) Fairs and convention center activities conducted primarily for amusement or entertainment;

(5) Any general sale, fair, auction, or bazaar sponsored by any church or religious organization;

(6) Garage sales held on premises devoted to residential use;

(7) Sales of crafts or items made by hand and sold or offered for sale by the person making the crafts or handmade items;

(8) Sales of agricultural products, except nursery products and foliage plants;

(9) Sales made by a seller at residential premises pursuant to an invitation issued by the owner or legal occupant of the premises; or

(10) School-sponsored bazaars and sales, concessions at school athletic and other events, and sales of paraphernalia used in the celebration of any nationally recognized holiday or used in connection with any public school, university, or college-related activities, flea markets, retail firework establishments, gun shows, sales by charitable organizations, sales of coins, and expositions sponsored by government entities or by nonprofit trade associations.

(b) A transient merchant not otherwise exempt from the provisions of this subchapter shall not be relieved or exempted from the provisions of this subchap-

ter by reason of associating himself or herself temporarily with any local dealer, auctioneer, trader, contractor, or merchant or by conducting such temporary or transient business in connection with or in the name of any local dealer, auctioneer, trader, contractor, or merchant.

Ark.Code Ann. § 17–49–104.

The Plaintiff states the following undisputed material facts, all of which are admitted by the Defendants:

1. Plaintiff Homier is an Indiana corporation with its headquarters in Huntington, Indiana. It has been in operation since 1958, now has annual sales of about $100 million and has earned and maintained the highest business reputation.

2. Homier sells quality hardware and similar items a short-term sale [sic] conducted at fixed premises in communities across the United States.

3. Homier operates about 23 sales crews. Each typically conducts two or three sales per week in different locations across the United States, including Arkansas.

4. Homier competes against permanent local hardware stores, discount stores (e.g. Kmart and Wal–Mart) and other stores that carry similar items to serve local demand in the area of each sale. Pulaski County does not itself impose any license or fee requirement on permanent retailers, although some sell items similar to those sold by Homier.

5. Over the past several years, Homier has conducted two or three sales per year in Pulaski County. At the direction of the county clerk, it has obtained a license under the TMLA for each such sale. In each case it was required to pay the $250 fee, post a bond at an expense of about $100, and otherwise comply with the TMLA.

6. Documents produced by defendants show that, since January 1, 1999, Pulaski County has issued 23 licenses under the TMLA, all to licensees from a state other than Arkansas.

7. The County Clerk's office understands the license requirement to apply only to merchants that come into the county from elsewhere. Defendants know of no record of any enforcement action against an Arkansas merchant for failing to obtain a license under the TMLA.

8. Defendant Staley is the Pulaski County Clerk and is required by the TMLA to administer its licensing regime in Pulaski County. She is the senior official of Pulaski County with such responsibility. Under her authority, the Office of County Clerk has devised forms, adopted policies, and implemented a program for licenses transient merchants [sic]. When her office receives an inquiry, such as it received from Homier, it informs the prospective transient merchants that a transient merchant license "must" be obtained and it provides the necessary forms, reviews them, and issues the license. Processing a transient licensing fee takes only about 20 minutes of one employee's time.

9. Defendant Johnson is the sheriff and Defendant Jegley is the prosecuting attorney of Pulaski County. The TMLA imposes on them a special "duty" to enforce its requirements. Each of them is accustomed to carry out his legal duty as defined by Arkansas statutes. As of the time Homier filed this suit, neither had determined that the TMLA was not valid.

10. Homier protested the requirements of the TMLA to the Arkansas Attorney General and to various Pulaski County officials, including the sheriff, prosecut-

ing attorney, and county clerk, but without success. The Attorney General, sheriff, and prosecuting attorney did not respond to pre-suit letters from Homier. The county clerk's office accepted Homier's check, marked "paid under protest," and deposited it into the county's general fund. Homier reasonably understood that, if it disregarded the county clerk's instructions and the plain language of the TMLA, it risked criminal liability and business disruption.

11. Homier expects to conduct future sales in Pulaski County, and wishes to be relieved of the burdens associated with the TMLA and the county's licensing requirements without risking criminal liability or business disruption due to enforcement of the TMLA or related county policies and practices. It also seeks compensation for bonding costs it has incurred in recent years ($400), because of its status as a transient merchant.

The Defendants state the following undisputed material facts, all of which are admitted by the Plaintiff:

1. Homier is an Indiana corporation with its permanent headquarters located in Huntington, Indiana.

2. Homier is engaged in the business of selling hand and power tools, home furnishings, and other general merchandise at short-term sales conducted at fixed premises in communities across the United States, including Arkansas.

3. Homier achieves over $100 million in annual nationwide sales.

4. During 2001 and 2002, Homier held five sales in Pulaski County. For each sale it has conducted in Pulaski County, Homier has paid a licensing fee in the amount of $250 and posted a surety bond in the amount of $2000 in accordance with the requirements of the TMLA.

5. The bonding costs for Homier is $100 each, though on occasions two sales used one bond.

6. In each of its applications for a transient merchant license, Homier has identified the Pulaski County Clerk, Carolyn Staley, as its agent for service.

No material facts are in dispute.

## II. Discussion

The Constitution grants Congress the power "[t]o regulate Commerce with foreign nations, and among the several States, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3. This literal grant of power to Congress has long been considered as a limitation on state legislative power over matters concerning interstate commerce. *See, e.g., Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). As the Court of Appeals of New York recently recognized:

This "dormant" or "negative" aspect of the Commerce Clause has a meandering judicial history. However, at this point in the jurisprudence surrounding the Commerce Clause, a clear set of governing principles has emerged.

A regulation or tax that discriminates in favor of local economic interests is invalid unless it is narrowly tailored to accomplish a compelling local purpose or, in the case of a tax, can meet the stringent standards of the "compensatory tax" doctrine (*see, C & A Carbone v. Clarkstown*, 511 U.S. 383, 390, 114 S.Ct. 1677, 1682, 128 L.Ed.2d 399; *Oregon Waste Sys. v. Department of Envtl. Quality*, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13; *Associated Indus. v. Lohman*, 511 U.S. 641, 647–650, 114 S.Ct. 1815, 1820–1822, 128 L.Ed.2d 639). Under this principle, local statutes that facially discriminate against interstate trade are subject to a "virtually per se rule of invalidity" and are " 'routinely

struck down'" on the theory that local economic protectionism is incompatible with the maintenance of a single national economic unit[.] *Oregon Waste Sys. v. Department of Envtl. Quality* [,] *supra*, at 98–100, 114 S.Ct. at 1349–51; *see*, (*West Lynn Creamery v. Healy*, 512 U.S. 186, 192–193, 114 S.Ct. 2205, 2210–2211, 129 L.Ed.2d 157, quoting *New Energy Co. v. Limbach*, 486 U.S. 269, 273–274, 108 S.Ct. 1803, 1807–1808, 100 L.Ed.2d 302; *Associated Indus. v. Lohman*, *supra*, at 647, 114 S.Ct. at 1820–1821; *Hughes v. Oklahoma*, 441 U.S. 322, 337, 99 S.Ct. 1727, 1736–37, 60 L.Ed.2d 250; *Hood & Sons v. Du Mond*, 336 U.S. 525, 537–538, 69 S.Ct. 657, 664–65, 93 L.Ed. 865). In contrast, local laws that regulate even-handedly with only incidental effects on interstate commerce are generally upheld unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits" (*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174; *accord, Oregon Waste Sys. v. Department of Envtl. Quality, supra*, at 99, 114 S.Ct. at 1349–50). Thus, whether a particular local regulation or tax is discriminatory or even-handed is a critical inquiry.

*Homier Distrib. Co., Inc. v. City of Albany*, 90 N.Y.2d 153, 659 N.Y.S.2d 223, 681 N.E.2d 390, 393 (1997).

The Supreme Court of the United States has held: "The Commerce Clause presumes a national market free from local legislation that discriminates in favor of local interests." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 393, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). The first issue for this Court is whether the TMLA discriminates in favor of local economic interests, or does it regulate even-handedly with only incidental effects on interstate commerce.

At first blush, it appears that the TMLA regulates even-handedly. All transient merchants, whether from Arkansas or another state, must satisfy the act's requirements. But is this the proper Commerce Clause comparison? Case law suggests not.

The Plaintiff in the instant case filed a similar declaratory judgment lawsuit in New York state court challenging the City of Albany's transient retailer tax. In reversing the lower courts' decisions, New York's highest court held that the proper Commerce Clause comparison is between the transient retailers and the local established retailers. The court thereafter struck down the tax as *per se* violative of the Commerce Clause. The Court quotes relevant portions of this decision:

> Plaintiff brought this action to challenge a City of Albany ordinance which imposes a special tax on "transient" retailers who operate at temporary business sites. At the heart of the plaintiff's complaint is its claim that the tax discriminates in favor of local retail businesses and therefore violates the Commerce Clause.... The City, in contrast, contends that the ordinance is inoffensive to the Constitution because it applies even-handedly to both in-state and out-of-state transient retailers and serves a legitimate public purpose. Having reviewed the relevant Supreme Court precedent, we concluded that the challenged ordinance is unconstitutionally discriminatory and that, accordingly, it is invalid.
>
> . . .
>
> The present dispute arose from a sale plaintiff conducted between August 20 and 23, 1992 at a rented site within the City of Albany. Pursuant to the challenged ordinance ... the City required plaintiff to obtain a transient business license, to pay a tax calculated on the

basis of its gross sales and to post a $2,500 bond to insure compliance with its tax obligation....

...

The Albany City ordinance challenged in this proceeding imposes a tax burden on "transient" retailers that is not imposed on retailers who operate from fixed locations within the City....

...

In the courts below, the challenged Albany City ordinance was deemed "even-handed" and not discriminatory because it was imposed on all transient retailers and did not differentiate among them "based on the in— or out-of-state origin of the merchandise sold ... or the location of the transient retailer" .... In the lower courts' view, the fact that the tax could be imposed upon a New York State transient retailer was dispositive of plaintiff's contention that the tax is facially discriminatory. This analysis, however, is based on an overly narrow view of what constitutes "discriminatory" legislation.

More than a half century ago, the Supreme Court made clear that a local law is impermissibly discriminatory if it imposes a burden on interstate commerce and affords local merchants an economic advantage (*Nippert v. Richmond*, 327 U.S. 416, 432, 66 S.Ct. 586, 594, 90 L.Ed. 760). The Court further held that the discriminatory character of the law is not altered because its burden may also fall upon some local businesses. The principle was subsequently applied without extended discussion in *Dean Milk Co. v. Madison*, 340 U.S. 349, 354, n. 4, 71 S.Ct. 295, 298 n. 4, 95 L.Ed. 329....

...

Albany's transient retailer tax is imposed on all merchants who do not operate from a fixed location within the City's borders and, consequently, it confers an economic advantage on a particular class of local businesses, *i.e.*, those that ply their wares from fixed locations. Since, by definition, the class of favored businesses includes only locals, the ordinance cannot be considered "even-handed" and is, thus, *per se* invalid....

*Homier*, 659 N.Y.S.2d 223, 681 N.E.2d at 391–94.

As the New York court observed, an ordinance is no less discriminatory merely because in-state interests are also burdened by the regulation. *See C & A Carbone*, 511 U.S. at 391, 114 S.Ct. 1677. Furthermore, "[d]iscrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.* at 392, 114 S.Ct. 1677.

The Defendants challenge the New York court's holding in *Homier* as "flawed," contending that the court improperly relied on *C & A Carbone* for its decision. However, the *C & A Carbone* case was cited by the New York court only for the proposition that the discriminatory character of a law is not altered merely because its burden falls also upon some local businesses. Rather, the New York court relied upon the *Nippert* case for the principle that the proper comparison is between the transient merchants and the local retail businesses. The Defendants offer no case law or other authority disagreeing with the holdings of either the New York court or *Nippert*.

In *Nippert*, a 1946 Supreme Court case, a city imposed a flat $50 license fee on any solicitor that operated in the city for any period, however short. Like the TMLA, the license fee applied to all solicitors, whether local or from out-of-state. The Supreme Court, nevertheless, compared the solicitors to the local retail merchants

in finding the license fee discriminatory under the Commerce Clause. *See Nippert v. City of Richmond,* 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946). ·

This Court concludes that the New York court's analysis in *Homier* was a correct application of the Commerce Clause principles enunciated by the Supreme Court in *Nippert.* Therefore, because the TMLA discriminates against interstate commerce in imposing the licensing and bonding requirements upon transient merchants, it is *per se* invalid, unless the Defendants can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest (i.e., can the discrimination be justified?). The Defendants have not met this burden. Numerous non-discriminatory methods of protecting the citizens of Arkansas from "improper sales techniques" are available. *See* Ark.Code. Ann. § 17–49–102.[2]

Therefore, the Plaintiff is entitled to summary judgment in its favor. This conclusion is consistent with recent Supreme Court decisions concluding that statutes structured so to pressure entities to establish or increase local operations are violative of the Commerce Clause. *See, e.g., American Trucking · Assocs., Inc. · v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987).[3] A local regulation is discriminatory when it entails differential treatment of in-state and out-of-state economic interests. *See Homier,* 659 N.Y.S.2d 223, 681 N.E.2d at 394.

Because the legislation enacting the TMLA does not contain a severability clause, *see* 1983 Ark. Acts 587, the Court will leave it to the Arkansas legislative processes to fashion a new regulatory scheme that comports with the Commerce Clause and other applicable law, if such is deemed necessary and proper. .

The Court is mindful of the Defendants' argument that "one of the benefits of conducting a transient business is to avoid the burdens associated with maintaining a permanent business, such as rent, utilities, real property tax, etc." · However, the Defendants do not argue, and offer no proof, that the TMLA fee is meant to serve as a "compensatory" tax placing transient merchants on the equal footing with fixed-location retailers. *See Homier,* 659 N.Y.S.2d 223, 681 N.E.2d at 396. In any event, the license fee is a fixed amount, and not tied to an applicant's gross sales, or even a sale's duration.[4]

## III. Conclusion

The Court hereby declares pursuant to the Declaratory Judgment Act that the Arkansas Transient Merchant Licensing Act, Ark.Code. Ann. § 17–49–101 *et seq.* is facially unconstitutional as violative of the Commerce Clause of the United States Constitution. The Defendants Pulaski County and its officials are hereby enjoined from implementing or enforcing the act.

**2.** The Plaintiff states: "No modern authority has sustained the discriminatory requirements such as those imposed by the TMLA, nor could it, since there are many obvious ways to craft licensing and bonding requirements that apply equally to all retailers and that are fairly apportioned to reflect intensity of use or benefit."

**3.** Furthermore, the license is valid only for a specific location and duration. A transient merchant seeking to hold sales at various locations or at different times presently must obtain multiple licenses.

**4.** In this vein, the TMLA flat fee scheme is problematic. Relying on *Nippert,* the *American Trucking* Court held that "imposition of the flat taxes for a privilege that is several times more valuable to a local business than to its out-of-state competitors is unquestionably discriminatory and thus offends the Commerce Clause." *American Trucking,* 483 U.S. at 296, 107 S.Ct. 2829.

As noted, the Plaintiff also seeks money damages, costs and attorneys' fees pursuant to 42 U.S.C. §§ 1983 & 1988. The Court will permit the parties forty-five days from the entry of the instant memorandum opinion and order to submit a proposed agreed order regarding said damages, costs and fees. If the parties are unable to reach an agreement, they are each, by said date, to submit a supplemental brief setting forth their differing views on such matters.

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Summary Judgment (Doc. # 23) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that the Defendant Mr. Jegley's Cross–Motion for Summary Judgment (Doc. # 34) be, and it is hereby, DENIED.

### JUDGMENT

Pursuant to the Order dated April 13, 2004, the Court entered judgment in favor of Homier and against the Defendants in the amount of $30,770.77, plus post-judgment interest, for attorney's fees and expenses in connection with this successful 42 U.S.C. § 1983 action. Therefore,

IT IS ORDERED that JUDGMENT in the amount of $30,770.77 plus post-judgment interest in the amount of 1.32 percent per annum be, and it is hereby, entered in favor of Plaintiff, Homier and against the Defendants.