Chief Judge Desmond.
This article 78 CPLE proceeding was brought against Nassau County and its County Comptroller to challenge the validity under the Federal and State Constitutions of chapter 837 of the Laws of 1956, and Nassau County Local *36 Law No. 1 of 1956 pursuant to which the county by authorization of the State statute imposed a 30% tax on admissions to the harness horse races held at petitioner’s racetrack in Nassau County (which tax petitioner paid from 1956 until 1964). By earlier laws passed in 1952 (chs. 148, 236) and in 1954 (chs. 285, 287) the State gave its permission to all counties (availed of by Nassau in 1954) to levy a 15% tax on such admissions. The 1956 State law change made possible an increase from 15% to 30% of county-collected admissions taxes at harness tracks in cities or counties adjacent to a city having a population in excess of two million, that is, to New York City.
The Appellate Division by a vote of 3 to 2 held that the 1956 State statute and the Nassau County local law passed pursuant thereto were unconstitutional because of lack of a rational basis for a distinction between a tax on running tracks (as to which counties are allowed to impose a 15% admissions tax only) and harness tracks in the metropolitan area. This, said the Appellate Division majority, denied to petitioner equal protection of the laws. One of the Justices who made up the majority, while concurring in this specification of unconstitutionality, thought that the State statute had been invalidly passed since, so he reasoned, it was in effect a local law and so, under the Home Rule provisions of the State Constitution (art. IX, § 1, subd. [b], as it was in 1956), required a request therefor by the Board of Supervisors of the county or a certificate of necessity signed by the Governor. It had neither. The two dissenting Justices, pointing to the settled rule that “In matters of taxation, the Legislature has broad powers of classification ”, concluded that it was not arbitrary or lacking in reason to find distinctions between the two types of horse race meetings and that there was no violation of either Constitution.
Before arriving at the prime constitutional question (equal protection) we consider several other grounds of alleged invalidity asserted by petitioner but all rejected by the Appellate Division. In the first of these petitioner says that the 1956 statutory change despite its general verbiage was actually directed at petitioner’s track in Nassau County and a similar harness racing track at Yonkers in Westchester County and so was a law local in its terms or in its effect requiring under (former) article IX (§ 1, subd. [b]) of the New York State Con *37 stitution a request from the local Board of Supervisors for a certificate of necessity transmitted by the Governor to the Legislature. It is true that limiting this authorized tax increase to cities or counties adjacent to New York City reduced its coverage to these two tracks since no other harness race tracks operate in that area. But such geographical classifications are old in New. York law and have consistently been upheld (People v. Dunn, 157 N. Y. 528; Farrington v. Pinckney, 1 N Y 2d 74; Matter of Four Maple Drive Realty Corp. v. Abrams, 2 A D 2d 753, 754, app. dsmd. 2 N Y 2d 837, app. dsmd. 355 U. S. 14; Spatt v. City of New York, 13 N Y 2d 618, app. dsmd. 375 U. S. 394). In 1898 in Matter of Henneberger (155 N. Y. 420) this court said that “ good reasons exist why, in a general law, reference may he had to conditions of population, whether in counties, cities, towns or villages, or with respect to a proximity to cities of a certain growth ” (pp. 429-430). In 1944 in Stapleton v. Pinckney (293 N. Y. 330, 334) we said that a statute need not be classified as local for Home Buie purposes but although it contained classifications ‘ ‘ based upon population or upon proximity to great centres of population may be a general law though only a single municipal corporation or locality can at the time receive its benefits ” (see, similarly, Robinson v. County of Broome, 276 App. Div. 69 [1949], affd. 301 N. Y. 524 [1950]). It is to be kept in mind that enactment of tax laws is a State function but that the State may “ delegate to a county or city power to assess and collect taxes in different ways ” (County Securities v. Seacord, 278 N. Y. 34, 37). It is important, too, as to the Home Rule point, that chapter 837 of the Laws of 1956 is permissive, not mandatory (see New York Steam Corp. v. City of New York, 268 N. Y. 137, 143, 144).
Next, petitioner argues that the Nassau County enactment was void in that at the time of its passage Nassau County had no present authority since its local law was passed three days before the State enabling act was signed by the Governor. However, the local law itself took care of this by providing that it should take effect immediately if the Governor meanwhile should have approved the State act, but that, if the Governor should not have attached his signature to the State enactment on or before the approval of the local law, the latter should take effect on the day on which the Governor should approve the State bill. Such *38 arrangements for a statnte taking effect on the happening of some future event do not result in invalidity (see Barto v. Himrod, 8 N. Y. 483, 490).
Another argument against the validity of the admissions tax increase is that such local taxation of racetracks is not permitted under section 9 of article I of the State Constitution, That section created an exception to the constitutional prohibition of gambling and permitted pari-mutuel betting on horse races “ as may he prescribed by the legislature and from 'which the state shall derive a reasonable revenue for the support of government Petitioner would have us read that language to mean that the county, as distinguished from the State itself, may not be authorized to collect a tax on admissions to any racetrack where there is pari-mutuel betting. However, the right of the State to tax or to permit a county to tax racetrack admissions is not based on or affected by that part of section 9 of article I. The tax with which we are here concerned is not a tax on betting but on admissions fees charged for entering the racetrack. There is a substantial difference between those two kinds of taxes.
We arrive now at the major issue, that is, as to the constitutionality of taxing admissions fees to the two kinds of racetracks at two different rates. The Appellate Division wrote that “ there is no rational basis for a distinction between a tax on running tracks and one on harness tracks. They are both parts of a single sport of horse racing.” The first answer to that is that the Legislature in many other statutes has ordered different treatment for “flat tracks” and “harness tracks”. For instance, corporations conducting running races are subject to license and control by the State Racing Commission (L, 1926, ch, 440, as amd,, § 6 et seq.) while harness track racing is controlled and licensed by a different commission with different powers (Pari-mutuel Revenue Law [L, 1940, ch. 254, as amd,], § 35 et seq.). The State’s taxation of betting at running tracks is at a rate and formula different from the tax on betting at the harness tracks (compare L, 1940, ch. 254, as amd., §§ 9 and 9-a with § 45). The fixation of the local admissions tax on these two kinds of tracks was by different statutes (see L. 19.52, chs. 148, 236). The Legislature has at various times provided financial assistance to both kinds of tracks for modernization of their *39 facilities, and this again was done under different statutes and under quite different formulae (compare, for instance, L. 1956, ch. 837, with L. 1955, ch. 813, and L. 1957, ch. 355). It is thus apparent that the Legislature, for whatever reason, has consistently and over a period of years put these two kinds of racetracks into different classifications for purposes of control and taxation.
In Matter of Keeney (194 N. Y. 281, 286) we said this: “ The right and power of governments to single out certain classes of objects for taxation, leaving other classes exempt or taxed at a different rate, or in a different manner, is unquestionable. * * * Such power has been exercised by all governments from the earliest times.” The Keeney opinion went on to say that the exercise of this power is subject to one condition only, that is, that the classification must not be “ ‘ so purely arbitrary as to have no reason, not even an insufficient or merely plausible reason, to justify it. ’ ” We put the same idea into other words in Matter of 436 West 34th St. Corp. v. McGoldrick (288 N. Y. 346, 349, 350) when we wrote that such classifications for taxation purposes are valid unless “ based on fictions or on arbitrary or unreasonable assumptions of fact ” or unless they indicate “hostile or oppressive discrimination ” and that “The question of constitutional validity disappears when it cannot be said that no state of facts reasonably justifying the classifications can be conceived”. Still another formulation of this principle is in McGowan v. Maryland (366 U. S. 420, 426) where it was written that ‘ ‘ A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” The controlling authorities which express and apply this concept are literally innumerable, including our 1964 decision (cited by the Appellate Division majority) of Ampco Print.-Advertisers’ Offset Corp. v. City of New York (14 N Y 2d 11, 24, app. dsmd. 379 U. S. 5) where we remarked that “An taxation there is a broader power of classification than in other exercises of legislation.’ ” Ampco cited People ex rel. Hatch v. Reardon (184 N. Y. 431, 445, affd. 204 U. S. 152) where it was recalled that ‘ ‘ Arbitrary selection and discrimination characterize the history of legislation, both state and national, with reference to taxation, yet, when all persons or property in the same class are treated alike, it has uniformly been sustained both by the state *40 and Federal courts * * * The power of taxation necessarily involves the right of selection, which is without limitation, provided all persons in the same situation are treated alike and the tax imposed equally upon all property of the class to which it belongs.” In the last paragraph of the Ampco opinion there is a considerable list of tax laws validated by the United States Supreme Court which upheld taxing discriminations as to the justice and reasonableness of which judgments might differ. The conclusion of the Ampco opinion was that such distinctions may not he considered arbitrary or violative of the equal protection clause where a state of facts reasonably can be conceived that would sustain it (see Matter of 436 West 34th St. Corp. v. McGoldrick, 288 N. Y. 346, 350, supra).
Our question then is this: is there any conceivable justification for this particular statutory classification? We do not know what prompted the Legislature to permit a 30% impost on harness tracks only and in certain parts of the State only. But differences have been recognized by the Legislature for a long time and it is for the Legislature, not for us, to say how these differences are to be taken account of. The differences must be substantial but “need not be great” (Tax Comrs. v. Jackson, 283 U. S. 527, 538, and list of instances at that page; see, also, Heisler v. Thomas Colliery Co., 260 U. S. 245, re taxing-anthracite and not bituminous coal, and Magnano Co. v. Hamilton, 292 U. S. 40, as to taxing oleomargarine differently from butter). For instance, harness racing is generally carried on at night and flat racing in the daytime. The Legislature could have come to the conclusion that night operations result in greater municipal costs than those in the daytime. Then, too, the harness racing tracks subject to the 30% authorization are in Nassau and Westchester Counties where there is little public transport and very large attendance and these tracks might be thought to require expenditure by the localities of larger amounts for highways. It can be judicially noticed and appears from official statistics that the two harness tracks which could be affected by these two increased admissions taxes are in the heavily populated metropolitan area, again justifying the conclusion that local government would be put to greater expense thereby than would be the case in rural areas. We will never know what in fact moved the Legislature but we cannot say there *41 is nothing in the local governmental legislation and management of a harness racing track adjacent to the metropolitan area, which is sufficiently different from running tracks elsewhere in the State, to warrant an authorization by the Legislature for the enactment of a different tax on admissions on these particular harness tracks.
Two other points should be mentioned as to both of which we agree with the Appellate Division. We hold that petitioner, being required by law to collect and pay over this tax, is a party aggrieved and so has standing to maintain this proceeding. We also agree with the court below that constitutionality may he tested out in an article 78 proceeding like this one (see CPLR 7803, subd. 2).
The order appealed from should be reversed, the petition dismissed and the County Comptroller’s determination confirmed, with costs in this court and in the Appellate Division.
Judges Fuld, Burke, Bbrgan and Keating concur with Chief Judge Desmond; Judges Van VooRHis and Scileppi dissent and vote to affirm.
Order reversed, with costs in this court and in the Appellate Division, and matter remitted to the Comptroller of Nassau County for further proceedings in accordance with the opinion herein.