OPINION OF THE COURT
George B. Ceresia, Jr., J.
Plaintiff Homier Distributing Company (Homier) has instituted this action against the defendant City of Albany (City) and moved for partial summary judgment declaring section 7-240 of the Code of the City of Albany (the ordinance) to be in violation of the Commerce Clause of the United States Constitution (US Const, art I, § 8, cl [3]). Plaintiff further seeks a directive that the City reimburse it for taxes it paid pursuant to that ordinance. Homier also requests a hearing to determine costs and attorney fees to which it claims entitlement pursuant to 42 USC §§ 1983 and 1988. The City has answered, raising a variety of affirmative defenses and, on the merits, contending that the ordinance in all respects should survive constitutional challenge.
The material facts are undisputed. Homier is an Indiana corporation that is authorized to and transacts business in *725 this State and 40 other States. It is engaged in the business of wholesaling and retailing hardware, small electric tools, and other related consumer products. Its retail sales occur primarily at prescheduled sales conducted over a three-to-four-day period. It engages the necessary facilities, advertises, and brings the merchandise to the sale site prior to the sale date. At the conclusion of the sale, the unsold merchandise is brought to the next scheduled sale site. Orders to replenish inventory are placed with the corporate office in Indiana and the new merchandise is shipped to the upcoming sale location. Homier collects sales tax on, and files sales tax returns for its sales consummated in this State.
The instant dispute arises from the fact that when Homier rented a site (the Armory at 130 New Scotland Avenue) in the City and conducted a sale from August 20-23, 1992, the City required it, pursuant to the challenged ordinance, to obtain a transient retail business license to conduct the sale, to pay the City a tax on the gross sales generated by that sale, and to post a bond in the amount of $2,500 to ensure compliance with the taxing requirements. After the sale, Homier, under protest, paid the transient retail business tax required by the ordinance in the amount of $3,031.16. That tax was calculated by taking Homier’s gross sales for that event ($283,451.43) reduced by the City’s then applicable property tax equalization rate (i.e., 8.75%) to arrive at an assessed value of $24,802, to which the 1992 tax rate (i.e., $134.31 per $1,000) was applied to arrive at a transient retail business tax due of $3,031.16.
The City ordinance taxing transient retail business — not judicially challenged until this litigation — dates back to its passage on February 16, 1931. It imposes a tax based on the gross amount of sales of a transient retailer, "at the same rate as other property[1] is taxed for the year in such city” (Code of City of Albany § 7-238). It defines a transient retail business as "one conducted in a store, hotel, house building or structure for the sale and retail of goods, wares or merchandise except food products, and which is intended to be conducted for a temporary period of time and not permanently” (Code of City of Albany § 7-243 [emphasis added]). It includes a presumption that a business conducted at a location that is leased or rented *726 for a period of six months[2] or less is a transient business (Code of City of Albany § 7-243). The ordinance requires that in order to conduct a transient retail business in the City, a permit must be obtained from the City Clerk and a cash deposit or bond of not less than $1,000 shall be executed to ensure the company’s making a complete report of the gross amount of its sales in the City and paying the tax thereon (Code of City of Albany § 7-240). The ordinance was adopted pursuant to the nearly identical provisions of General Municipal Law § 85-a which authorizes, inter alla, the legislative bodies of cities to pass a transient retail business tax and provides that failure to pay such tax or to obey the provisions of an ordinance adopted thereunder is a misdemeanor. The City of Albany ordinance adopted its definition of transient retail business from General Municipal Law § 85-a.
General Municipal Law § 85-a was passed by the Legislature in 1917 (see, L 1917, ch 199, § 1), after its predecessor, General Municipal Law § 85 (repealed by L 1968, ch 435, § 2), was declared to be unconstitutional by the New York State Court of Appeals in People ex rel. Moskowitz v Jenkins (202 NY 53 [1911]). General Municipal Law § 85 had required a license for the sale in the City of goods represented or advertised as bankrupt stock, assigned stock, or damaged by fire, water or otherwise. The permissible fee payable to the City ranged from $25-$100 per month and operation of a transient business without a license was a misdemeanor subject to a fine. The Court held that an ordinance imposing a $100 monthly fee passed thereunder could not be sustained as an exercise of municipal police power designed to prevent fraud, since the payment of a license fee did not combat the targeted evil of false representations regarding merchandise (supra, at 57). The Court concluded that the evident purpose of the ordinance, which imposed a fee exceeding the prevailing commercial rents in the City, was to protect local merchants against outside competition, and not to safeguard customers (supra, at 58). The Court also determined that the ordinance was not a valid exercise of the municipal taxing power, as the distinction drawn between transient retailers who advertised goods as bankrupt or damaged stock and thus were taxed at $100 per month, and transient retailers who refrained from such *727 representations and thus paid no tax, was arbitrary and unreasonable and apparently designed to prevent competition (supra, at 59-60). The Court did not discuss the Commerce Clause ramifications of General Municipal Law § 85.
General Municipal Law § 85-a was enacted in 1917 to attempt to authorize municipalities to tax retail sales by transient businesses without the constitutional infirmities of General Municipal Law § 85. Research has not revealed any reported decision in which General Municipal Law § 85-a or an ordinance adopted thereunder has been challenged on constitutional or other grounds. In a 1918 opinion, the Attorney-General concluded that General Municipal Law § 85-a’s provisions for taxing transient merchants were constitutional in that "an effort ha[d] been made to subject transient retailers to a reasonable tax in accordance with the suggestion of the court in [Jenkins]” (Matter of Construing General Municipal Law, §§ 85, 85-a, 18 NY State Dept Rep 444, 446 [Nov. 26, 1918]). Relying thereon, the State Comptroller decades later upheld an ordinance "drafted directly from § 85-a” concluding that "A city may impose a tax on transient retail business therein based upon the gross amount of sales of such business” (1967 Opns St Comp No. 67-523, at 465-466). Neither opinion expressly analyzed section 85-a or any municipal ordinance under either the Commerce Clause or other specific Federal constitutional provision.
Homier’s primary contention is that the City ordinance[3] tax directly and unconstitutionally regulates and discriminates against interstate commerce, and its sole purpose and effect are "to protect local retail merchants, who are exempt from the tax, from the competition of itinerant peddlers and drummers” (plaintiff’s mem of law, at 5-6; see, complaint, at 15). Homier concedes that it fits within the statutory definition of a transient retail business.
The Federal Commerce Clause provides that the Congress shall have power "To regulate commerce * * * among the several States” (US Const, art I, § 8, cl [3]). Although phrased as a grant of congressional authority, it is well established that it "also embodies a negative command forbidding the States to discriminate against interstate trade.” (Associated *728 Indus. of Mo. v Lohman, 511 US —, —, 114 S Ct 1815, 1820.) Analysis of the issues focuses on the interaction between the negative Commerce Clause and a State’s taxing power. A guiding fundamental precept is that "a State may not tax a transaction * * * more heavily when it crosses state lines than when it occurs entirely within the State” (Armco, Inc. v Hardesty, 467 US 638, 642 [1984]). Also, since the issues address a State’s delegation of its taxing authority to a municipality (see, Matter of United States Steel Corp. v Gerosa, 7 NY2d 454; NY Const, art XVI, § 1; see also, Matter of Roosevelt Raceway v County of Nassau, 18 NY2d 30), it is important to note that a State "may not grant its political subdivisions a power to discriminate against interstate commerce that [the] State lacked in the first instance.” (Associated Indus. of Mo. v Lohman, supra, 511 US, at —, 114 S Ct, at 1824.)
The United States Supreme Court has formulated a two-prong approach to analyzing State economic regulation under the Commerce Clause. "When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [the Court has] generally struck down the statute without further inquiry” as virtually per se invalid (Brown-Foreman Distillers Corp. v New York State Liq. Auth., 476 US 573, 579 [emphasis supplied]; see also, Associated Indus. of Mo. v Lohman, supra, 511 US, at —, 114 S Ct, at 1815; Armco, Inc. v Hardesty, 467 US 638, supra; Oregon Waste Sys. v Department of Envtl. Quality, 511 US —, 114 S Ct 1345). However, when "a statute has only indirect [and incidental] effects on interstate commerce and regulates evenhandedly, [the inquiry is] whether the State’s interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.” (Brown-Foreman Distillers Corp. v New York State Liq. Auth., supra, 476 US, at 579, relying on Pike v Bruce Church, Inc., 397 US 137, 142 [origin of second-tier balancing approach]; see also, Hughes v Oklahoma, 441 US 322, 336.) Upon judicial scrutiny under either approach, the critical consideration is the "practical operation” of the challenged statute/ ordinance, i.e., its over-all and actual effect on local and interstate activity (Brown-Foreman Distillers Corp. v New York State Liq. Auth., supra; American Tel. & Tel. Co. v New York State Dept. of Taxation & Fin., 84 NY2d 31, 35). The burden to show discrimination, of course, rests on the party challenging the validity of the taxing statute/ordinance, here Homier, but once it demonstrates discrimination the burden *729 shifts to the State/municipality to demonstrate a legitimate local purpose as well as the unavailability of adequate nondiscriminatory alternatives to preserve that local interest (Hughes v Oklahoma, supra, 441 US, at 336, quoting Hunt v Washington Apple Adv. Commn., 432 US 333, 353).
The parties to this dispute, expectedly, disagree as to which prong of the analysis this ordinance falls under. Homier contends that the ordinance is per se invalid as facially and directly discriminatory against out-of-State retailers, whereas the City maintains it has at most only an incidental effect on interstate commerce. This court cannot agree with the plaintiff for the reasons that follow.
Careful examination of the ordinance makes clear that the tax is not imposed based on the in- or out-of-State origin of the merchandise sold by transient retailers or the location of the transient retailer in or out of this State (cf., Armco, Inc. v Hardesty, 467 US 638, 642, supra; Oregon Waste Sys. v Department of Envtl. Quality, 511 US —, 114 S Ct 1345, supra [surcharge facially invalid under negative Commerce Clause where it imposed fee on solid waste generated out of State and disposed of in State]). In Armco (supra), upon which Homier relies, the Supreme Court ruled that a wholesale gross receipts tax unconstitutionally discriminated against interstate commerce because it exempted in-State manufacturers, emphasizing that "a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.” (467 US, at 642.) As such, the tax in Armco impacted companies selling tangible property at wholesale differently, depending on whether the retailer conducted manufacturing in the State or out of it, i.e., it discriminated between transactions based on some "interstate element” (supra, at 642, quoting Boston Stock Exch. v State Tax Commn., 429 US 318, 332, n 12). In comparison, the tax imposed by the City of Albany differentiates between retailers based upon whether they intend to conduct retail sales on a permanent or temporary basis in the City and without regard to any "interstate element”. Thus, goods manufactured in Troy, New York, Chicago, Illinois, or even Albany, New York, are treated the same if sold by a transient retail merchant in Albany. Indeed sales of goods produced out of State but sold by a permanent retail merchant in the City of Albany would not be subject to the transient retail tax at issue, demonstrating that the tax imposition is not based on an "interstate element.”
*730 The term " 'discrimination’ simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter” (Oregon Waste Sys. v Department of Envtl. Quality, supra, 511 US, at —, 114 S Ct, at 1350; see also, American Tel. & Tel. Co. v New York State Dept. of Taxation & Fin., supra, 84 NY2d, at 34). The differential tax treatment accorded under the ordinance does not result solely from the sites of their activities in or out of State, and does not provide a direct commercial advantage to in-State retailers (cf, American Tel. & Tel. Co. v New York State Dept.0 of Taxation & Fin., supra [State statute accorded access fee deductions based upon sites of property in State; unconstitutionally created commercial advantage for intrastate long-distance carriers]; Boston Stock Exch. v State Tax Commn., supra, 429 US, at 332 [State transfer tax on securities transactions which imposed greater tax liability on out-of-State sales than on in-State sales is an unconstitutional burden on interstate commerce by providing direct advantage to in-State business]). Further, the ordinance does not impose the type of "simple economic protectionism” of in-State business for which a virtually per se rule of invalidity has been erected (see, City of Philadelphia v New Jersey, 437 US 617, 624 [New Jersey law prohibiting importation of most solid waste originating out of State held to violate Commerce Clause]; Brown-Foreman Distillers Corp. v New York State Liq. Auth., supra, 476 US, at 580 [State law which effectively regulated prices of alcohol out of State by sellers in State ruled unconstitutional]; see also, C & A Carbone v Town of Clarkstown, 511 US —, 114 S Ct 1677 [May 16, 1994] [town ordinance requiring solid waste to be deposited for a fee at one specific facility in town discriminates against interstate commerce]).
As this court understands the taxing ordinance, it imposes a gross receipts tax upon the retail sales of transient businesses conducted on a temporary basis in the City of Albany without regard to where the goods are produced. The ordinance does not differentiate based on whether the retailer’s permanent business is located in this or another State. Rather it exempts those merchants who conduct permanent retail businesses in the City while taxing the gross receipts of all other transient retail merchants, both from in State and out of State. Homier’s reliance on a long line of Supreme Court "drummer” cases, so named because they involve taxation upon the solicitation of interstate business by representatives of out-of-State retail merchants for the sale of goods not *731 yet transported into that State, is misplaced. In those cases, the Supreme Court ruled unconstitutional, as a tax imposing a direct burden upon interstate commerce, State or municipal laws taxing or imposing license fees upon a drummer’s sale of goods or orders taken for goods not yet brought into that State for nonresident dealers or manufacturers. The decisions were based on the principle that the negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, constitutes interstate commerce and that the taxes imposed thereon worked discrimination against and impermissibly burdened that interstate commerce (see, Robbins v Shelby County Taxing Dist., 120 US 489, 497-498 [1887]; see also, Nippert v City of Richmond, 327 US 416 [1946]).
These "drummer” cases are to be distinguished from a line of cases more conceptually and factually similar to the case sub judice, i.e., the so-called "peddler” cases in which the Supreme Court has upheld, against constitutional Commerce Clause challenges, State or municipal taxes on peddlers who bring goods into the taxing State where they are sold and delivered by the peddlers. In those cases, the tax applied equally to residents and products of the taxing State and those of other States, and the peddlers’ dealings and sales were not accompanied or followed by the interstate transfer of goods (Machine Co. v Gage, 100 US 676; see also, Annot., Supreme Court’s Views as to Constitutionality of State or Municipal Regulation of Peddlers, Drummers, Canvassers, and the Like, 48 L Ed 917, 924-930, §§ 6-8 [1977]). Indeed, Robbins (120 US, at 497, supra), a drummer case, recognized this key distinction between taxation of the sale or ordering of goods to be brought into the taxing State which is an unconstitutional tax on interstate commerce itself, and the sale of merchandise, as here, already in the taxing State and thus "part of its general mass of property” subject to taxation "provided that no discrimination be made against them as goods from another state”. Despite Homier’s contentions to the contrary, the ordinance does not discriminate against the transient retailers’ sale of goods as goods from another State. The differentiation made is between permanent and transient retailers without consideration of the geographic origin of the merchandise. There being no direct discrimination or favoritism accorded in-State retailers, the ordinance is not per se unconstitutional as Homier argues.
Turning to the second prong of the two-tiered approach to analyzing State or municipal economic regulation or taxa *732 tian under the Commerce Clause, the inquiry is whether the taxing ordinance has an indirect or incidental effect on interstate commerce and, if so, whether the statute regulates/taxes evenhandedly to effectuate a legitimate local public interest without imposing a burden on interstate commerce which exceeds the putative local benefits (Pike v Bruce Church, Inc., supra, 397 US, at 142; see also, Brown-Foreman Distillers Corp. v New York State Liq. Auth., supra, 476 US, at 579; Hughes v Oklahoma, supra, 441 US, at 331, 336). It appears fairly clear that the ordinance may have at least some indirect incidental effect on interstate commerce in that a portion of transient retailers who are subject to the gross receipts tax do business or are based in other States and cross State lines to conduct retail sales in the City of Albany. For example, Homier was required to pay a tax of $3,331.16 for a sale whose gross receipts amounted to $283,451.43 (resulting in a tax between 1% and 2%) which tax may indirectly effect Homier’s willingness/ability to conduct future sales in this State and/or in the City of Albany. The ordinance taxes all transient businesses evenhandedly, however, regardless of whether their permanent home is in or out of State, based upon the reasonable distinction between retail merchants with permanent businesses in the City who pay property taxes and transient retailers who do not (and instead pay taxes at the same rate as property is taxed in the City). The ordinance serves the legitimate municipal public purpose of producing revenues (the only purpose proffered by the City) by requiring transient retailers to pay their fair share of municipal costs already paid by permanent retailers in the City. There has been no showing that Homier has paid more than its fair share under the taxing ordinance or that the de minimis burden on interstate commerce exceeds the local benefit of requiring those engaged in transient business to pay their share of the municipal tax burden (see, Oregon Waste Sys. v Department of Envtl. Quality, supra, 511 US, at —, 114 S Ct, at 1351-1352 [discussing whether facially discriminatory tax is a justifiable compensatory tax achieving a legitimate local purpose]). The ordinance thus survives judicial scrutiny upon application of the Pike balancing test, and Homier’s motion for partial summary judgment based upon the alleged unconstitutionality of the ordinance under the Commerce Clause is denied.
Plaintiff also moves for summary judgment under its third cause of action alleging that the unconstitutional imposi *733 tian of a municipal gross receipts tax upon transient retail businesses amounted to a deprivation of its rights under 42 USC § 1983, entitling it to attorney fees and costs under 42 USC § 1988. To state a claim under section 1983, plaintiffs "must allege, at a minimum, conduct by a person acting under color of law which deprived [it] of a right, privilege or immunity guaranteed by the [Federal] Constitution or the [Federal] laws” (DiPalma v Phelan, 81 NY2d 754, 756; see also, Parratt v Taylor, 451 US 527, 535). That burden was not established, since no Federally protected right was violated. Thus, plaintiff has not stated a cause of action under section 1983.
Since plaintiff’s summary judgment motion was based on a question of law, i.e., the unconstitutionality of section 7-240 of the Code of the City of Albany, and since there are no questions of fact, the decision herein is determinative of the issues.
Accordingly, the defendant City is entitled to and hereby is granted summary judgment dismissing plaintiff’s first and third causes of action. Because no motion was made regarding plaintiff’s second cause of action (raising an equal protection challenge to the ordinance), it remains intact.

. The "other property” statutory language has been understood to refer to the prevailing real property tax rate, i.e., requiring the gross retail sales to be taxed at the "same rate” as real property is taxed in the City. Neither party challenges this interpretation of the ordinance.

. As originally enacted, the presumption applied to businesses conducted and places rented for a period of two months or less. The presumption was amended in 1931 to extend that period to six months.

. While Homier challenges and focuses on the constitutionality of the ordinance rather than General Municipal Law § 85-a, since their wording is nearly identical the pertinent constitutional analysis will be equally applicable to both provisions.