John V. Hartzell, Esq. Informal Opinion County Attorney No. 2004-3 Jefferson County County Office Building 175 Arsenal Street Watertown, New York 13601
Dear Mr. Hartzell:
You have inquired as to how many years of tax records a county treasurer must search before she can provide, pursuant to Real Property Law § 334, a certificate that all taxes have been paid. Additionally, you have asked whether your county has the legal authority to adopt a local law requiring that this tax payment certificate be provided by an abstract and title company, or to adopt a local law permitting the county treasurer to charge a fee for providing the tax payment certification. We conclude that the statute does not limit the search to a specified number of years, but contemplates that the treasurer will conduct as diligent a search as reasonably practical to uncover delinquent taxes. We further conclude that your county lacks authority to enact the local laws you describe.
BACKGROUND
Real Property Law § 334 requires persons or corporations that subdivide real property for the purpose of offering the subdivided lots for sale to the public to file a map of the property, certified by the licensed land surveyor who completed the map, in the office of the clerk of the county where the property is situated. The owner of the subdivision or of the unsold lots is subject to a penalty of $25.00 for each lot sold or conveyed prior to the filing of the map. See Real Property Law § 334. The purpose of this filing requirement is "to make a public record of the map for the sake of definiteness and certainty." In re City of New York,239 N.Y. 119, 129 (1924).
Real Property Law § 334 also requires that the owner file a certificate stating that all relevant taxes have been paid. It provides:
 Every such map of subdivided land, whether intended as an original subdivision or as an alteration of a prior subdivision, shall have endorsed thereon or annexed thereto at the time such map is offered to be filed a certificate of the county treasurer or of an abstract and title company and a certificate of the tax collecting officer of any county, city, town or village wherein such property or any part thereof is situate, stating that all taxes levied and unpaid and in addition, all taxes which are a lien prior to the time such original or subsequent map is offered to be filed, whether assessed against the entire tract of land or against any lot or part of such land, have been paid, and a certificate of the county director of real property tax services that the fee authorized by section five hundred three of the real property tax law, if any, has been paid and the county clerk shall not file any such map without such endorsements or certificates.
(emphasis added). Thus, a subdivision owner may not sell lots without filing the map described in section 334, and the map may not be filed unless the county treasurer or an abstract and title company certifies that all levied and unpaid taxes and all tax liens have been paid.
The tax payment certificate requirement was added to section 334 in 1938, but at that time applied only to property in Erie County. See Act of April 11, 1938, ch. 649, § 1, 1938 N.Y. Laws 1711. The requirement was later expanded to apply to real property in Broome (by Chapter 418 of the Laws of 1943) and Monroe Counties (by Chapter 74 of the Laws of 1966). The reference to these specific counties was subsequently eliminated so that a tax payment certificate would be required for subdivision map filings throughout the State.[1] See Act of July 28, 1985, ch. 605, § 1, 1985 McKinney's N.Y. Laws 1505, 1506; Act of March 19, 1968, ch. 57, § 1, 1968 McKinney's N.Y. Laws 141, 142.[2]
According to its legislative history, the tax payment certificate requirement was intended to address problems that local governments had encountered in attempting to collect delinquent taxes when a parcel was subdivided or existing subdivision lines were changed. Subdividing a parcel or changing the subdivision boundaries frequently fragmented any existing tax liens among new parcels, making it difficult for the local government to determine the amount of real property taxes outstanding against each of the new lots and to collect them. The legislation sought to prevent alteration of property lines by the mere filing of a subdivision map when back taxes were owed against a parcel. See Bill Jacket for ch. 605 (1985), at 5, 7, 8 (comments on amendment to Real Property Law § 334 that extended tax payment certificate requirement state-wide); Bill Jacket for ch. 649 (1938), at 4, 8 (comments on amendment to Real Property Law § 334 adding tax payment certificate requirement for property in Erie County).
ANALYSIS
A. The Obligation to Search Tax Records Before Providing a Tax PaymentCertificate
You have asked how many years of tax records a county treasurer must search before she can provide a subdivision owner with the certificate required by Real Property Law § 334, stating that all taxes and tax liens against the subject property have been paid.
Section 334 does not define the number of years of tax records that must be searched in order to issue such certification.[3] We are not aware of any other statutory or regulatory provision that defines how far back a county treasurer must search before she can certify that a parcel of real property is not subject to any outstanding taxes or tax liens. Moreover, nothing in the legislative history of section 334 (or in the legislative history of other statutes that require a similar tax payment certificate for subdivision filings) indicates that the Legislature contemplated that the search would be limited to a specific time-frame.
By its terms, section 334 requires a tax payment certificate stating thatall unpaid taxes and taxes that have become a lien have been paid. In this regard we note that unpaid real property taxes become a lien against the property pursuant to statute and such tax liens remain a lien "until paid." See Real Property Tax Law §§ 902 (taxes levied by county), 1312 (school district taxes), 1422 (village taxes). This language has been interpreted to mean that proceedings to enforce such statutory tax liens are not subject to a statute of limitations period. See L.K. Land Corp.v. Gordon, 1 N.Y.2d 465 (1956) (interpreting language in both New York City Charter and Administrative Code providing that tax liens remain in effect "until paid" to mean that no period of limitations bars enforcement of such liens), cert. denied sub nom., Greenfield v. L.K.Land Corp., 352 U.S. 989 (1957); Op. State Compt. No. 88-47; Op. State Compt. No. 81-204; Op. State Compt. No. 74-281; Op. State Compt. No. 53-6111. Thus, the county could seek to enforce any tax lien, no matter how old, revealed in connection with a request for a section 334 tax payment certificate.
On this basis, it could be argued that section 334 requires a county treasurer to search as far back as possible to find all potential unpaid taxes and outstanding tax liens. We recognize, however, that such a literal interpretation of the county treasurer's responsibilities under section 334 may be impractical. Searching older tax records is often a difficult and time-consuming process and it may be difficult to conduct a search that rules out the possibility of any pre-existing tax liens.
We do not believe that such an inflexible interpretation of the statute is necessary or accords with the statute's intended purpose. Under established rules of statutory construction, a statute must be interpreted in light of its intended purpose and a construction that leads to an absurd result is to be avoided. See Statutes § 96 cmt., 1 McKinney's Cons. Laws of N.Y. at 209 (1971) ("Language of a statute is not to be accepted in all of its sheer literalness without regard to the object which the statute was designed to accomplish; and a statute is not to be read with a literalness that kills meaning, intention, purpose or beneficial end for which the statute was designed."); id. § 145, at 294 ("A construction which would make a statute absurd will be rejected.")
The requirement that a property owner obtain a tax payment certificate as a prerequisite to the filing of a subdivision map prevents the subdivision of a parcel or the alteration of existing subdivision lines when outstanding taxes are due against the property. As recognized in its legislative history, the creation of subdivision lots or the alteration of lot boundaries makes collection and enforcement of real property taxes more difficult. Thus, a primary purpose of the provision is to aid local governments in the enforcement of unpaid property taxes and tax liens.
Presumably, there is a point beyond which searching the county's tax records is not practical and is unlikely to result in the collection of significant additional tax revenues. Interpreted in light of its intended purpose and the practical constraints on searching for older tax liens, we believe the statute requires the treasurer to go as far back as reasonably practical to ascertain the existence of unpaid taxes and tax liens prior to issuing the tax payment certificate pursuant to Real Property Law § 334.[4]
B. The County's Authority to Pass a Law Exempting the County Treasurerfrom the Duty to Issue Tax Payment Certificates
You have also asked whether a county is authorized to adopt a local law requiring that the tax payment certificate required by Real Property Law § 334 be provided by an abstract and title company, thus divesting map filers of the option of obtaining the certification from the county treasurer. For the reasons discussed below, we believe that such a local law relates to the collection of taxes and because it would be inconsistent with the requirements of section 334, is unauthorized.
While a municipality has broad power to enact local laws pursuant to the law of municipal home rule, see N.Y. Const. art. 9, § 2(c); Mun. Home Rule Law § 10, such power is not unbounded. One limitation is that the municipality may not enact legislation inconsistent with the Constitution or any general law. N.Y. Const. art. 9, § 2(c); Mun. Home Rule Law § 10(1). Additionally, while a county is specifically authorized to enact local laws relating to the collection of local taxes authorized by the State Legislature, such laws "shall be consistent with laws enacted by the legislature." N.Y. Const. art. 9, § 2(c)(ii)(8); Municipal Home Rule § 10(1)(ii)(a)(9);[5] see Matter of Rab Co. v. Tompkins County Bd. ofAssessment Review, 68 A.D.2d 374, 375 (3dDep't 1979). This restriction recognizes that taxation is a State function in which local governments have limited delegated powers. See Sonmax, Inc. v. City of New York,43 N.Y.2d 253, 257 (1977); Roosevelt Raceway, Inc. v. Nassau County,18 N.Y.2d 30, 37 (1966).
Although the general subject matter of Real Property Law
§ 334 is the recording of subdivision maps and not the collection of local taxes, the legislative history of the tax payment certificate requirement suggests that this specific provision was enacted as a local tax collection measure. As noted, the provision was originally enacted, and subsequently expanded to all counties, for the purpose of assisting local governments in the collection of real property taxes. The tax payment certificate requirement was originally added to section 334 to address specific problems Erie County was encountering in collecting delinquent taxes on subdivided parcels. See Bill Jacket for ch. 649 (1938), at 4, 8. The tax collection purpose of the provision was reaffirmed when the requirement was extended state-wide. See Division of Budget Recommendation on Bill (July5, 1985), at 1-2, reprinted in Bill Jacket for ch. 605 (1985), at 8 (noting that bill making requirement state-wide will "aid local governments in the collection of delinquent taxes by preventing the dissolution by subdivision of parcels upon which liens exists"); Letter from Charles D. Cook, Senate Sponsor of the Bill (June 28, 1985), at 1, reprinted in Bill Jacket for ch. 605 (1985), at 7 (requirement that delinquent taxes be paid before subdivision map may be filed "will assist localities in the fair and efficient administration of the real property tax system"); see also Letter from Office for Local Government (Apr.28, 1970), at 2, reprinted in Bill Jacket for ch. 689 (1970), at 9 (amendment limiting tax payment certificate requirement to specified counties "relates to statement of termination of real property tax liens (taxation), a matter of State concern"). Consequently, a local law that attempts to vary the criteria of the tax payment certificate required by Real Property Law § 334 would likewise be considered a law relating to the collection of local taxes, requiring consistency with both general and special state laws.[6] See Op. State Compt.
No. 82-98 (concluding that local law creating tax payment certificate requirement for subdivision map filings was related to collection of local taxes and impermissible because it was inconsistent with Real Property Law § 334, which at that time did not require certificate for filings in that county).
By eliminating the option of obtaining the requisite certification from the county treasurer, a local law requiring that a subdivision owner obtain the required tax payment certificate from an abstract and title company would be plainly inconsistent with Real Property Law § 334.See, e.g., Matter of Rab Co. v. Tompkins Co. Bd. of Assessment Review,68 A.D.2d at 375 (local law that alters date when complaints must be filed with local board of assessment is inconsistent with state law); Op. State Compt. No. 81-268 (village law imposing administrative charge in connection with collection of late taxes inconsistent with state law directing local officials to collect late tax with interest and no other charge). Notably, the original bill amending section 334 to add a tax payment certificate requirement for property in Erie County was vetoed by the Governor in 1937 because it limited property owners to obtaining a certificate only from an abstract and title company. See Senate Bill Int. No. 717, Assembly Bill Int. No. 1063 (Feb. 15, 1937); Memorandum of Governor's Counsel in Support (Apr. 8, 1938), reprinted in Bill Jacket for ch. 649 (1938), at 8. In the following year, legislation permitting property owners to obtain the requisite certificate from either the county treasurer or an abstract and title company was signed into law. See Act of April 11, 1938, ch. 649, § 1, 1938 N.Y. Laws 1711.
Accordingly, we conclude that the county may not enact a local law requiring that the tax payment certificate required by Real Property Law § 334 be furnished by an abstract and title company. Such a local law would be inconsistent with a legislative enactment relating to the collection of local taxes by a county and thus would be prohibited under Municipal Home Rule Law § 10(1)(ii)(a)(9).
C. Imposing a Fee for the County Treasurer's Certificate of Tax Payment
Real Property Law § 334 does not impose a fee in connection with the issuance of the required tax payment certificate or specifically authorize such a fee. Nor are we aware of any other State statute that expressly permits the county treasurer to charge a fee for conducting a tax search or issuing a tax payment certificate. Cf. C.P.L.R. 8010
(setting county treasurer's fees for services in connection with court deposits and payments and investments). You have asked whether the county may adopt a local law permitting the county treasurer to charge a fee for providing a tax payment certification.
As discussed, see supra Part B, a local law relating to the tax payment certificate of Real Property Law § 334 must be consistent with that provision because it concerns the collection of local taxes. Thus, the issue is whether a local law establishing a fee for the treasurer's tax payment certificate conflicts with Real Property Law § 334. Although this matter is not free from doubt, on balance we believe that such a local law is inconsistent with the State law and is therefore unauthorized.
On the one hand, we note that the payment of a fee by a subdivision owner for the required tax payment certificate is not altogether inconsistent with section 334. The statute provides that the subdivision owner may obtain the certificate from either an abstract and title company or the county treasurer, and presumably abstract and title companies generally charge a fee for this service. Thus, from a practical standpoint, a local municipal fee would put the county on equal-footing with private certification issuers. However, we believe that such a fee is impermissible in the absence of legislative authorization.
We find it significant that the certification is a condition precedent to filing a subdivision map with the county clerk and that this requirement was made part of the filing statute. Fees for real property filings, including the filing and indexing of maps, are set forth in State law. See C.P.L.R. 8019 (except as specified, county clerk fees in C.P.L.R. art. 80 supersede fees allowed by any other statute for same services); C.P.L.R. 8021(a) (setting county clerk fees for, inter alia, real property filings). Because the issuance of a certificate is a condition precedent to filing the subdivision map, imposition of a fee for the issuance of a certificate to be filed with a subdivision map would, in practice, constitute an additional fee incurred as part of the map filing process.
Given that State law already provides for a map filing fee, and that section 334 does not authorize an additional local fee for the county treasurer's tax search and certification, we believe it is appropriate to infer that the Legislature did not intend for an additional municipal fee to be charged.[7] See Op. Att'y Gen. (Inf.) No. 96-25 (where state law sets county clerk fee for abandonment of filed subdivision maps, town may not enforce fee schedule in connection with duties of town officials under state law); see also 76 C.J.S. Records § 19 (1994) (recognizing principle that a statutory filing fee generally covers all acts necessary to complete a legal filing); cf. Real Property Tax Law § 503(7),(8) (permitting local governments to enact a fee within statutory maximums for subdivision map filings that require changes upon local government tax maps). Indeed, the Comptroller has opined that in the absence of express authority for a local fee, the municipality must have implied authority to impose a fee; this implied authority is narrowly construed: the fee must be necessary to effect an expressly granted power or be indispensable to the functioning of the municipal government. See Op. State Compt. No. 81-34 (county does not have implied authority to charge a fee in connection with statutory duty to process real property transfer reports because, although it may be inconvenient to do so without remuneration, the fee is not indispensable and essential to the functioning of the county government).
Moreover, we have previously indicated that real property filings and recordings implicate state concerns and as such do not generally appear to be within the scope of home rule authority of local governments. See Op. Att'y Gen. (Inf.) No. 96-49 (town may not adopt ordinance requiring additional language in deeds conveying real property within town); Op. Att'y Gen. (Inf.) No. 92-55 (municipality may not enact law varying requirements of Real Property Law § 333-b relating to filing and recording of maps and plot plans); see also Op. Att'y Gen. (Inf.) No. 97-15 (restating principle). In other areas of state concern, we have concluded that a local law establishing a fee for the required local government service would be unauthorized. See Op. Att'y Gen. (Inf.) No. 2003-4 (county may not enact local law permitting fees for probation services except as authorized by State law); Op. Att'y Gen. (Inf.) No. 87-45 (concluding that Penal Law provision, which specifies permit fee, provides exclusive procedure for firearms licenses and village may not establish additional fee for pistol license application); Op.Att'y Gen. (Inf.) No. 83-13 (county may not enact local law authorizing fee for certificate of residency issued to prospective community college enrollee under Education Law § 6305(3) because it would encroach upon State's authority over education).
Accordingly, we conclude that a local law imposing a fee for the issuance of a tax payment certificate would be inconsistent with section 334, and is therefore unauthorized.
The Attorney General issues formal opinions only to officers and departments of State government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
LAURA ETLINGER, Assistant Solicitor General
In Charge of Opinions
FRANK BRADY Assistant Solicitor General
[1] There is a limited exception to state-wide applicability of section 334. Real Property Law §§ 334-a and 335 govern the filing of subdivision maps in Nassau and Suffolk Counties, respectively, and both of these statutes contain a tax payment certificate requirement similar to the one in section 334. See Real Property Law §§ 334-a(1), 335(9). The tax payment certificate requirements of these statutes were added in 1944 (by Chapter 182 of the Laws of 1944, amending Real Property Law § 334-a) and 1936 (by Chapter 662 of the Laws of 1936, amending Real Property Law §335).
[2] The reference to Erie, Monroe and Broome Counties was deleted in 1968, making the tax payment certificate a state-wide requirement, but two years later the statutory requirement was again limited to the original three counties because treasurers in other counties experienced practical difficulties in issuing the required tax payment certificates. See Act of May 8, 1970, ch. 689, § 1, 1970 Laws of N.Y. 2365, 2366; Bill Jacket for ch. 689 (1985), at 3-4, 5, 8-9. The reference to these three counties was again eliminated from the tax payment certificate requirement of section 334 in 1985.
[3] The owner of a subdivision must obtain a similar tax payment certificate in order to file a record of abandonment of a subdivision under Real Property Tax Law § 560. That statute requires a certificate from the county treasurer and local collecting officer stating that all taxes levied against the property "have been paid according to the records in the office of the person making the certificate." Id. § 560(2).
[4] Although this tax payment certificate requirement was intended to aid the county in its revenue collection efforts, it is possible an erroneously-issued tax payment certificate might preclude the county from enforcing its tax lien or subject the county to a claim for damages. Cf. Roose v. Hamilton, 161 Misc. 800 (Co. Ct. 1935) (county treasurer liable to title company for damages resulting from erroneously issued tax search certificate), aff'd as modified 249 A.D. 852 (2d Dep't 1937), aff'd276 N.Y. 678 (1938); Op. State Compt. No. 75-612 (recognizing that where county treasurer has erroneously certified to prospective buyer that there are no taxes due on property, buyer may have tort claim against treasurer for damages if subsequently compelled to pay back taxes).
[5] We note that under Municipal Home Rule § 10, the requirement that local laws relating to the collection of taxes be consistent with all State laws applies to laws enacted by counties, towns and villages, but not to laws enacted by cities. See id. § 10(1)(ii)(a)(9); Op. State Compt. No. 82-120.
[6] Whether the tax payment certificate provision of Real Property Law § 334 should be considered a general law for home rule purposes is relevant only with respect to cities, which as noted, see supra n. 5, are not subject to the restriction regarding the adoption of local tax collection measures set forth in Municipal Home Rule § 10(1)(ii)(a)(9). Neither cities nor other municipalities may adopt local laws that are inconsistent with a general State law, except as specifically permitted by the Legislature. N.Y. Const. art. 9, § 2(c); Mun. Home Rule Law § 10(1). We note that by its terms the tax payment certificate provision is generally applicable throughout the State, and indeed the legislative history indicates that the current provision was intended to create a state-wide requirement. Thus, it appears to be a general law provision for home rule purposes. See Town of Smithtown v. Howell, 31 N.Y.2d 365,375 (1972) (amendment eliminating exception for two counties rendered state statute general rather than special law).
[7] We note that the requirement of a local government certificate as a condition precedent to a real property filing is fairly unique. The only similar circumstance of which we are aware involves subdivision maps and abandonments and condominium maps that necessitate a change on the county tax map. Under Real Property Tax Law § 503, the county legislature (or under certain circumstances, the town or city legislative body) is authorized to establish a fee to be paid to the county director of real property tax services by any person filing a subdivision or condominium map or an instrument abandoning a subdivision when the map or abandonment necessitates a change on the county tax map. See id. § 503(7),(8). To ensure that the fee is paid before the map is filed, the statutes governing these filings require that the map be accompanied by a certificate from the county director of real property tax services stating that the fee authorized by Real Property Law § 503, if any, has been paid. See Real Property Law §§ 334, 339-s; Real Property Tax Law §560(2). The authorization of a fee for this particular filing further suggests that in the absence of such express authorization, imposition of a fee would be inconsistent with the existing statutory framework and thus not permitted.