*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 17, 2015                    520754
_____

In the Matter of TOWN OF VERONA
    et al.,
                        Appellants,

        v                                    OPINION AND ORDER

ANDREW M. CUOMO, as Governor of
    the State of New York,
    et al.,
                        Respondents,
                        et al.,
                        Respondents.

_____

Calendar Date:  October 15, 2015

Before:  Garry, J.P., Egan Jr., Rose and Clark, JJ.

                    _____

        O'Connell & Aronowitz, Albany (Cornelius D. Murray of counsel), for appellants.

        Eric T. Schneiderman, Attorney General, Albany (Victor Paladino of counsel), for Andrew M. Cuomo and others, respondents.

                    _____

Garry, J.P.

        Appeal from a judgment of the Supreme Court (Ceresia Jr., J.), entered July 8, 2014 in Albany County, which, among other things, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion for summary judgment dismissing the petition/complaint.

        In May 2013, the Oneida Nation of New York entered into a settlement agreement (hereinafter the agreement) with respondents

Madison County and Oneida County (hereinafter collectively referred to as the Counties) and the State of New York that resolved various longstanding disputes. The agreement included a covenant that the Oneida Nation would support a public referendum to amend the NY Constitution to authorize casino gambling and would not fund any opposing campaigns or litigation. The Oneida Nation received various concessions, including a guarantee of geographic exclusivity prohibiting competition from other casino owners in a 10-county region. The State and the Counties further agreed to resolve or discontinue various legal and administrative disputes involving the Oneida Nation, including federal litigation challenging a decision by the United States Department of the Interior (hereinafter the Department) that had placed 13,000 acres of land located in the Counties into trust. The State and the Counties also agreed that they would not oppose the Oneida Nation if it sought to place an additional 12,000 acres in trust. Later in 2013, legislation was enacted, known as the Upstate New York Gaming Economic Development Act of 2013 (L 2013, chs 174, 175) (hereinafter UNYGEDA), that ratified the settlement and provided a framework for the implementation of legalized casino gambling in New York (see Executive Law § 11; Racing, Pari-Mutuel Wagering and Breeding Law art 13). Thereafter, the NY Constitution was amended by public referendum to permit casino gambling at certain facilities authorized by the Legislature (see NY Const, art I, § 9 [1]).

Petitioners Town of Vernon and Town of Verona (hereinafter collectively referred to as the Towns), as well as four residents of the Towns – petitioners Michael McDonough, Daniel Deal, James Anderson and Michael Phillips (hereinafter collectively referred to as the individual petitioners) – commenced this combined action for a declaratory judgment and proceeding pursuant to CPLR article 78 to challenge the agreement. The first cause of action alleges that the agreement constituted an improper attempt by the State to buy votes and "rig" the outcome of the referendum in violation of the individual petitioners' voting rights and their rights to freedom of speech and equal protection. The second cause of action asserts that the agreement illegally deprived the Towns of the right to govern and control land within their boundaries, including the right to regulate land use and levy taxes. The third cause of action seeks to invalidate the UNYGEDA

on the ground that it was prematurely passed before the NY Constitution was amended by the referendum.

Respondents removed the matter to federal court, where the United States District Court for the Northern District of New York determined that petitioners lacked standing, dismissed the petition and remitted the matter to Supreme Court (Town of Verona [Oneida County] v Cuomo, 2013 WL 5839839, *6-7, 2013 US Dist LEXIS 155283, *21-22 [ND NY, Oct. 30, 2013, No. 1:13-CV-1100 (LEK/DEP)]).  Respondents then answered and moved for summary judgment dismissing the combined action/proceeding.  Petitioners cross-moved to amend the combined petition/complaint.  Supreme Court denied the cross motion and granted respondents' motion. Petitioners appeal.

Turning first to the claims raised by the Towns, Supreme Court properly determined that they do not have the capacity to bring this combined action/proceeding.  "Capacity to sue is a threshold matter . . . [that] concerns a litigant's power to appear and bring its grievance before the court" (Silver v Pataki, 96 NY2d 532, 537 [2001] [internal quotation marks and citation omitted]; accord Matter of Graziano v County of Albany, 3 NY3d 475, 478-479 [2004]).  As municipalities are political subdivisions of the State, they ordinarily lack the capacity to contest State decisions that "affect[] them in their governmental capacity or as representatives of their inhabitants" (Matter of County of Nassau v State of New York, 100 AD3d 1052, 1055 [2012] [internal quotation marks and citation omitted], lv dismissed and denied 20 NY3d 1092 [2013]; see Matter of County of Oswego v Travis, 16 AD3d 733, 735 [2005]).  This general rule has several recognized exceptions, one of which applies when a municipality's claim is based upon a violation of its home rule powers, which are guaranteed by the NY Constitution and not subject to the will of the Legislature (see NY Const art IX; Matter of New York Blue Line Council, Inc. v Adirondack Park Agency, 86 AD3d 756, 758 [2011], appeal dismissed 17 NY3d 947 [2011], lv denied 18 NY3d 806 [2012]).  The Towns argue that this exception is applicable here, contending that the agreement, and the provisions of the UNYGEDA that ratified it, undermined their home rule powers by violating their rights to tax, regulate and govern the land within their boundaries (see City of New York v State of New

York, 86 NY2d 286, 291-292 [1995]; see also Town of Black Brook v State of New York, 41 NY2d 486, 489 [1977]). Specifically, the Towns assert that they were deprived of the power to regulate land use — "one of the core powers of local governance" (Matter of Wallach v Town of Dryden, 23 NY3d 728, 743 [2014]) — by the placement of land within their boundaries into trust, which removed the property from the Towns' zoning and environmental regulatory authority. The Towns further contend that they lost the ability to impose and collect property taxes on this land, as well as sales tax revenues from transactions on the land that had previously been distributed to them.

These negative consequences, however, did not result from the agreement or from the UNYGEDA, but, instead, from the decision by the Department to place the lands in trust. That decision had already been made when the agreement was executed, and it was unaffected by any State action other than the agreement's provision that the State and the Counties would discontinue then-pending federal litigation that challenged the Department's decision. In 2014, the State and Counties did so (New York v Jewell, 2014 WL 841764, *12, 2014 US Dist LEXIS 27042, *39-40, [ND NY, Mar. 4, 2014, No. 6:08-CV-0644 (LEK/DEP)]). The State has no constitutional obligation to pursue litigation, nor have petitioners established that the litigation would have resulted in the reversal of the Department's decision to place the lands in trust if it had not been settled. Further, the discontinuance of the State's claims did not foreclose the Towns from pursuing separate federal litigation that challenged the Department's action, which they did until the action was dismissed on the merits in 2015 (Town of Verona v Jewell, 2015 WL 1400291, *10, 2015 US Dist LEXIS 38100, *26 [ND NY, Mar. 26, 2015, No. 6:08-CV-0647 (LEK/DEP)]). Thus, the State's actions did not cause the harm that forms the basis of the Towns' claims.[1] Accordingly, the Towns failed to

---

[1] Moreover, "[t]he home rule provisions of [NY Constitution] article IX do not operate to restrict the Legislature in acting upon matters of State concern," even when those matters also have local significance (Matter of Kelley v McGee, 57 NY2d 522, 538 [1982]). The agreement and the ratifying

establish that the agreement and the UNYGEDA impinged upon their home rule powers, and Supreme Court properly ruled that they lacked the capacity to bring this action/proceeding.[2]

As for the claims of the individual petitioners, only the second and third causes of action remain to be addressed, as petitioners concede that Supreme Court was correct in dismissing the first cause of action on the ground that it was rendered moot when the public referendum was held and the NY Constitution was amended to authorize casino gambling. With regard to the remaining claims, respondents first contend that the individual petitioners lack standing because they did not demonstrate that they "suffered an injury in fact, distinct from that of the general public[,] . . . [and] that the injury claimed falls within the zone of interests to be protected by the [constitutional provision or] statute challenged" (Lancaster Dev., Inc. v McDonald, 112 AD3d 1260, 1261 [2013], lv denied 22 NY3d 866 [2014], quoting Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998]). However,

_____

legislation resolved longstanding federal and state litigation involving the State, the Counties and the Oneida Nation, and ratified a 1993 gaming compact between the Oneida Nation and the State and, thus, furthered "matter[s] of substantial state concern" (Greater N.Y. Taxi Assn. v State of New York, 21 NY3d 289, 302 [2013]).

[2] We reject the Towns' assertion that Supreme Court's separate determination that the individual petitioners have standing as citizen-taxpayers to pursue the second and third causes of action allows the Towns to continue to litigate the merits of those claims (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003], cert denied 540 US 1017 [2003]). The concepts of standing and capacity are related, but "conceptually distinct" (Silver v Pataki, 96 NY2d at 537; see Matter of County of Oswego v Travis, 16 AD3d at 735). The standing of the individual petitioners to prosecute the second and third causes of action does not alter the fact that the Towns lack capacity as to all three causes of action (see Matter of County of Oswego v Travis, 16 AD3d at 735).

Supreme Court's determination that the individual petitioners had standing to bring the second and third causes of action was not premised on a determination that they had suffered the requisite injury. On the contrary, the court found that the individual petitioners had standing as citizen-taxpayers pursuant to State Finance Law § 123-b, which permits a citizen-taxpayer to challenge an allegedly unlawful expenditure of state funds without a showing of injury in fact when such claims "have a sufficient nexus to fiscal activities of the State" (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 813 [internal quotation marks and citation omitted]). Respondents do not challenge the court's determination in this regard, and, in view of the challenges raised by the individual petitioners to the fiscal consequences of the challenged State actions — which included, among other things, the settlement of pending property tax litigation involving the State and the Counties — we find no error.[3]

Turning to the merits of the individual petitioners' arguments, our previous determination that the Towns' constitutional home rule authority was not violated resolves the individual petitioners' claims on this point as residents of the Towns. We further reject their contention that the agreement is unenforceable on the ground of illegality because the Oneida Nation's covenant to support the referendum allegedly violated statutory prohibitions against giving or receiving consideration to induce another person to vote or refrain from voting (see Election Law §§ 17-142, 17-144; compare McConnell v Commonwealth

---

[3] We reject Supreme Court's alternate determination that the individual petitioners have common-law taxpayer standing, which arises to permit a challenge to legislative actions when "the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action" (Matter of Colella v Board of Assessors of County of Nassau, 95 NY2d 401, 410 [2000] [internal quotation marks and citation omitted]; see Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d at 589). No such barrier exists here, as the individual petitioners have access to the courts pursuant to State Finance Law § 123-b.

Pictures Corp., 7 NY2d 465, 471 [1960]).[4]  The terms of the
provision by which the Oneida Nation agreed that it would support
the referendum and would not fund any campaign to oppose it are
addressed solely to the Oneida Nation as a whole — which has no
voting rights — and make no reference to its individual members.
Nothing in the provision requires individual members of the
Oneida Nation to vote for or against the referendum, to refrain
from voting on it, or otherwise purports to control the exercise
of any member's voting rights; accordingly, the provision is not
an illegal vote-buying agreement.  As for the claim that the
agreement is void for illegality on the ground that it improperly
conditions the receipt of government benefits on the restriction
of the Oneida Nation's free-speech rights, the individual
petitioners have made no showing that they have third-party
standing to assert a violation of the rights of the Oneida
Nation, which is not a party in this matter (see Matter of
Fleischer v New York State Liq. Auth., 103 AD3d 581, 583 [2013],
lv denied 21 NY3d 856 [2013]; see generally Society of Plastics
Indus. v County of Suffolk, 77 NY2d 761, 773 [1991]).

With regard to the third cause of action, we reject
petitioners' contention that the Legislature did not have the
authority to enact the provisions of the UNYGEDA that authorized
casino gambling when the legislation was passed, as the NY
Constitution had not yet been amended.  Legislation is not
invalid on the ground that its effectiveness is contingent upon
the occurrence of a future event, so long as the law is "complete
when passed" and does not improperly delegate legislative
authority to a future popular vote or other contingent event
(People v Fire Assn. of Philadelphia, 92 NY 311, 319 [1883], affd
119 US 110 [1886]; see Matter of Roosevelt Raceway v County of
Nassau, 18 NY2d 30, 37-38 [1966], appeal dismissed 385 US 453
[1967]; Bank of Rome v Village of Rome, 18 NY 38, 45 [1858];
compare Barto v Himrod, 8 NY 483, 490 [1853]).  Here, the
legislation provided that its provisions legalizing casino

---

[4]  The agreement provides that the entire agreement will
become null and void if any material term, including the Oneida
Nation's covenant to support the referendum, is found to be
invalid or unenforceable.

gambling would take effect only after constitutional amendments authorizing casino gambling were approved and ratified (see L 2013, ch 174, § 52), an event beyond the control of the Legislature. Nothing in the legislation improperly purported to authorize voters to enact legislation or otherwise delegated the duties of the Legislature to the voters. Further, contrary to petitioners' argument, nothing in the legislation usurped the authority of future legislative bodies to repeal or modify the legislation or to adopt regulations pertaining to casino gambling.

Finally, Supreme Court did not abuse its discretion in denying petitioners' cross motion to amend the petition and complaint to add a fourth cause of action alleging that the agreement's geographic exclusivity provision is void under federal law because it interferes with the right of the Cayuga Nation to conduct casino gambling on tribal lands located within the Oneida Nation's exclusivity zone. Although leave to amend a pleading is ordinarily freely given, a proposed amendment that is plainly lacking in merit should not be granted (see Vollbrecht v Jacobson, 40 AD3d 1243, 1247 [2007]). Here, the amendment lacks merit for several reasons. First, petitioners lack standing to raise this challenge, as they have neither shown that they suffered an injury as a result of the exclusivity provision nor that they have third-party standing to assert a claim on behalf of the Cayuga Nation. Further, the court properly determined that it lacked jurisdiction to adjudicate this claim, as the agreement contains a forum selection clause providing that the United States District Court for the Northern District of New York has exclusive jurisdiction to enforce the agreement and entertain challenges to its enforceability. That court retained jurisdiction as part of its order approving the agreement and further found that any challenge by the Cayuga Nation on this ground was rendered moot by the Oneida Nation's waiver of the exclusivity provision to the extent that it would interfere with the Cayuga Nation's casino gaming rights (see New York v Jewell, 2014 WL 841764 at *5, *12, 2014 US Dist LEXIS 27042 at *18-19, *40). Thus, the court properly determined that the amendment lacked merit and denied the cross motion (see Aiello v Manufacturers Life Ins. Co. of N.Y., 298 AD2d 662, 663 [2002], lv dismissed and denied 99 NY2d 575 [2003]).

Given these determinations, it is unnecessary to reach respondents' argument that it would be inequitable to grant declaratory relief to petitioners on the basis of laches.

Egan Jr., Rose and Clark, JJ., concur.

ENTER:

Robert D. Mayberger
Clerk of the Court